UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

APPLIED ENERGETICS, INC.,                              :
                                                       :
                                    Plaintiff,         :  Case No.: 1:19-cv-01232-AJN
                                                       :
          - vs. -                                      :
                                                       :
STEIN RISO MANTEL MCDONOUGH, LLP,                      :
                                                       :
                                    Defendant.         :
                                                       :
------------------------------------------------------------------ x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 9(b) and 12(b)(6)

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
*Attorneys for Defendant*
*STEIN RISO MANTEL MCDONOUGH, LLP*
Joseph L. Francoeur
Tina C. Ma
150 East 42nd Street
New York, New York 10017
p. (212) 490-3000
f. (212) 490-3038
e: joseph.francoeur@wilsonelser.com
e. tina.ma@wilsonelser.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 3

ARGUMENT ............................................................................................................................ 9

    I.      Plaintiff Fails to State a Claim for Legal Malpractice ............................................ 9

          A.      Defendant Did Not Owe a Duty to Plaintiff and Did Not Proximately Cause Plaintiff's Alleged Injury in Connection with the Retainer Agreement ................................................................................................. 9

          B.      Plaintiff Fails to Allege a Breach of Duty by Defendant ......................... 12

    II.     Violations of Rules of Professional Conduct Do Not Give Rise to a Cause of Action and Are Duplicative of the Legal Malpractice Claim .............................. 13

    III.    Plaintiff Fails to State a Cause of Action for Aiding and Abetting Breach of Fiduciary Duty ...................................................................................................... 17

    IV.    Plaintiff Fails to State a Claim for Securities Fraud ............................................ 20

CONCLUSION ...................................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbey v. 3F Therapeutics, Inc.*,
No. 06 CV 409 (KMW), 2009 U.S.Dist. LEXIS 111917 (S.D.N.Y. Dec. 2, 2009) ................ 22

*Achtman v. Kirby, McInerney & Squire, LLP*,
464 F.3d 328m 337 (2d Cir. 2006) ........................................................................... 12

*Allen v. Antal*,
12-Civ. 8024 (NSR), 2015 U.S. Dist. LEXIS 123584, 2015 WL 5474080 (S.D.N.Y. Sep.
15, 2015), *aff'd Allen v. Antal*, 665 Fed. Appx. 9 (2d Cir. 2016) ................................................ 9

*AmBase Corp. v. Davis Polk & Wardwell*,
8 N.Y.3d 428, 866 N.E.2d 1033, 834 N.Y.S.2d 705 (2007) ...................................................... 12

*Anderson v. Greene*,
No. 14 Civ, 10249 (KPF), 2016 U.S. Dist. LEXIS 105671 (S.D.N.Y. Aug. 10, 2016) .......... 16

*Arga Capital, Inc. v. Kreiner LLC*,
2018 N.Y. Misc. LEXIS 664 (Sup. Ct., New York Cty. Feb. 23, 2018) .................................. 13

*Bernstein v. Oppenheim & Co.*,
160 A.D.2d 428, 554 N.Y.S.2d 255 (1st Dep't 1990) ............................................................. 12

*Bochicchio v. Smith Barney, Harris Upham & Co.*,
647 F.Supp. 1426 (S.D.N.Y. 1986) ........................................................................................ 23

*Brown v. Samalin & Block*,
155 A.D.2d 407, 547 N.Y.S.2d 80 (2d Dep't 1989) ................................................................ 14

*Bullmore v. Ernst & Young Cayman Is.*,
45 A.D.3d 461, 846 N.Y.S.2d 145 (1st Dep't 2007) ......................................................... 17, 20

*Chemical Bank v. Arthur Andersen & Co.*,
726 F.2d 930 (2d Cir. 1984), *cert denied*, 469 U.S. 884 (1984).............................................. 23

*DiTondo v. Meagher*,
85 A.D.3d 1385, 924 N.Y.S.2d 666 (3d Dep't 2011) ............................................................. 16

*Du Pont v.* Brady,
636 F.Supp. 1067 (S.D.N.Y. 1986) ........................................................................................ 21

*Esposito v. Noto*,
132 A.D.3d 944, 19 N.Y.S.3d 300 (2d Dep't 2015).............................................................. 13

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*,
   375 F.3d 168 (2d Cir. 2004) ................................................................................. 21

*Fletcher v. Boies, Schiller & Flexner LLP*,
   140 A.D.3d 587, 35 N.Y.S.3d 28 (1st Dept. 2016) ................................................ 13

*Friedman v. Kuczkir*,
   272 F.Supp.3d 613 (S.D.N.Y. 2017) ..................................................................... 15

*Global Mins. & Metals Corp. v. Holme*,
   35 A.D.3d 93, 824 N.Y.S.2d 210 (1st Dep't 2006) ............................................... 17

*Greene v. Greene*,
   56 N.Y.2d 86, 36 N.E.2d 496, 451 N.Y.S.2d 46 (1982) .................................. 10, 14

*Grey v. Gruntal & Co.*,
   No. 84-cv-5036 (PKL), 1987 U.S. Dist. LEXIS 4031 (S.D.N.Y. May 21, 1987) ................... 23

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996) ................................................................................... 21

*Hoffenberg v. Meyers*,
   No. 99 Civ. 4674, 2002 U.S. Dist. LEXIS 425, 2002 WL 57252 (S.D.N.Y. 2002) ............ 9

*Holtkamp v. Parklex Assoc.*,
   30 Misc.3d 1226(A), 926 N.Y.S.2d 944 (Sup. Ct., Kings Cty. Feb. 22, 2011) ........... 12, 13

*ICP Strategic Credit Income Master Fund Ltd. v. DLA Piper LLP (US) (In re ICP Strategic*
   *Credit Income Fund Ltd.)*,
   Case. Nos. 13-12116 (REG), 14-01835 (REG), 2015 Bankr. LEXIS 3128 (Bankr.
   S.D.N.Y. Sep. 15, 2015) ................................................................................. 19, 20

*Jiau v. Hendon*,
   No. 12 Civ. 7335 (PAE), 2014 U.S. Dist. LEXIS 18471 (S.D.N.Y. 2014) ................ 16

*Kaufman v. Cohen*,
   307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) ...................................... 17, 19

*Keness v. Feldman, Kramer & Monaco*, P.C.,
   105 A.D.3d 812, 963 N.Y.S.2d 313 (2d Dep't 2013) ............................................ 16

*Kolbeck v. LIT Am., Inc.*,
   939 F.Supp. 240 (S.D.N.Y. 1996) ........................................................................ 19

*Leder v. Spiegel*,
   9 N.Y.3d 836, 872 N.E.2d 1194, 840 N.Y.S.2d 888 (2007) ..................................... 9

iii

*Lloyd v. Indus. Bio-Test Laboratories, Inc.*,
   454 F.Supp. 807 (S.D.N.Y. 1978) ........................................................ 21

*Matter of Lawrence*,
   24 N.Y.3d 320, 23 N.E.3d 965, 998 N.Y.S.2d 698 (2014) ..................... 10

*Miazga v. Assaf*,
   136 A.D.3d 1131, 924 N.Y.S.2d 666 (3d Dep't 2016) ........................... 16

*Mills v. Pappas*,
   174 A.D2d 780, 570 N.Y.S.2d 726 (3d Dep't 1991) ............................. 14

*Morin v. Trupin*,
   778 F.Supp. 711 (S.D.N.Y. 1991) ......................................................... 21

*Oster v. Kirschner*,
   77 A.D.3d 51, 905 N.Y.S.2d 69 (1st Dep't 2016) .......................... 18, 19

*Palmeri v. Wilkie Farr & Gallagher LLP*,
   156 A.D.3d 564, 69 N.Y.S3d 267 (1st Dep't 2017) .............................. 16

*Sage Realty Corp. v. Proskauer Rose*,
   251 A.D.2d 35, 675 N.Y.S.2d 14 (1st Dep't 1998) .............................. 16

*Samuel M. Feinberg Testamentary Trust v. Carter*,
   652 F.Supp. 1066 (S.D.N.Y. 1987) ...................................................... 19

*Schimenti v. Whitman & Ransom*,
   208 A.D.2d 470, 617 N.Y.S.2d 742 (1st Dep't 1994) ......................... 13

*Serova v. Teplen*,
   No. 05-cv-6748 (HB), 2006 U.S. Dist. LEXIS 5781 (S.D.N.Y. Feb. 16, 2006) .................... 16

*Technomarine SA v. Gilports, Inc.*,
   758 F.3d 493 (2d Cir. 2014) ................................................................. 24

*Williamson v. PricewaterhouseCoopers, LLP*,
   9 N.Y.3d 1, 872 N.E.2d 842, 840 N.Y.S.2d 730 (2007) ....................... 10

*Wimbledon Fin. Master Fund, Ltd. v. Weston Captial Mgt. LLC*,
   Index No. 653468/2015, 2017 NY Slip Op 31515(U) (Sup. Ct., New York Cty. July 17,
   2017) .................................................................................................... 18

**Statutes**

Delaware Corporation Law § 141(f) ............................................................. 5

**Rules**

Fed. R. Civ. P. § 12(b)(6) ................................................................................................... 1, 3, 9, 24

Fed. R. Civ. P. § 9(b) ..................................................................................................... 1, 3, 21, 24

New York Rules of Professional Conduct 1.5 ................................................................... 15, 16, 17

New York Rules of Professional Conduct 1.8 ....................................................................... 14, 17

New York Rules of Professional Conduct Preamble .................................................................. 14

Rule 10b-5 ...................................................................................................................... 2, 20, 21, 22

v

This memorandum of law is submitted on behalf of Defendant, STEIN RISO MANTEL MCDONOUGH, LLP ("Defendant" or "SRMM"), in support of its motion to dismiss Plaintiff's Second Amended Complaint (the "Complaint"), on the merits and with prejudice, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).  Dismissal of this action is appropriate because the allegations set forth in the Second Amended Complaint fail to state a cause of action for legal malpractice, aiding and abetting breach of fiduciary duty, violations of New York Rules of Professional Conduct, and securities fraud.  In addition, because Plaintiff's cause of action for aiding and abetting breach of fiduciary duty arises out of the same facts and circumstances and seek the same relief as the cause of action for legal malpractice, it must be dismissed as duplicative.

## PRELIMINARY STATEMENT

This is in essence a legal malpractice claim which is subject to dismissal at the pleading stage for several reasons.  Plaintiff's claim for legal malpractice should be dismissed because: (1) Defendant did not owe a duty to Plaintiff in the negotiation of Defendant's legal fees and payment; and (2) Defendant did not breach any duty to Plaintiff in the legal services rendered.  Plaintiff alleges that Defendant committed malpractice when it failed to investigate whether the par value of $0.001 per share was the fair market value for Plaintiff's common stock as partial payment for Defendant's legal services.  However, New York courts have held that a law firm does not represent the client in the negotiation of a retainer agreement and does not owe the client a duty from which a claim of legal malpractice can be asserted.

Plaintiff sets forth a litany of purported duties, which they allege Defendant violated in connection with: (1) investigating the fair market value of the price per share in Plaintiff's negotiations with other third-party vendors; (2) disclosing or advising about the price of such shares to Plaintiff; and (3) disclosing or advising about Plaintiff's internal administrative procedure

1

concerning these transactions.   However, these allegations are simply Plaintiff's attempt to unilaterally impose liability on Defendant for failing to investigate, advise, or inform on matters for which Defendant had no duty to perform.   The documentary evidence establishes that Defendant was not retained or asked to negotiate the subscription agreements between Plaintiff and other third-party vendors.   Nor was Defendant asked to draft Plaintiff's documents concerning Board meetings, Board or committee authorizations, or other internal corporate procedures. Plaintiff's conclusory statements that Defendant had a duty in connection with such matters is unsupported, contradicted by the documentary evidence and wholly without merit.

Plaintiff's claims asserting a violation of the New York Rules of Professional Conduct (the "RPC") should also be dismissed because Plaintiff fails to allege any actual violation by the Defendant of the RPC.   The subscription agreement between Plaintiff and Defendant clearly contains the disclosure requirements under the RPC, and the documentary evidence establishes that <u>Plaintiff</u> dictated the value per share utilized in the subscription agreement.   Plaintiff's attempts to argue that no such disclosure was made is clearly belied by the clear and unambiguous language in the agreement itself.   Furthermore, even if Defendant violated the RPC, which it denies, a violation of a disciplinary rule does not give rise to civil liability on the part of the Defendant.

Lastly, the Complaint fails to state a securities fraud claim based on a violation of § 10(b) or Rule 10b-5 because it does not allege that: (1) Defendant was privy to any material non-public information about Plaintiff to which Plaintiff was not already aware; or (2) Defendant made any material representations or omissions upon which Plaintiff relied. Plaintiff's failure to allege or establish these necessary elements require a dismissal of Plaintiff's securities fraud cause of action. Further, the documentary evidence shows that any "material, non-public information" about

2

Plaintiff and any potential business strategy was provided by Plaintiff's authorized representative, *i.e.*, its Chief Executive Officer, George Farley ("Farley"), to Defendant, and not vice versa. Plaintiff's inability to establish the required elements for its securities fraud claim merits dismissal.

For these further reasons, the Second Amended Complaint should be dismissed, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) for Plaintiff's failure to state a cause of action against Defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

By retainer agreement dated February 4, 2016 (the "Retainer Agreement"), Plaintiff, acting through Farley, its Chief Executive Officer and the last remaining member of the Board, retained Defendant for the following services:

> Our services will consist of representing you in connection with (i) general business and tax matters, and (ii) on such other matters which you may refer to us from time to time; provided that, we will not work on any matters involving your responsibilities under Federal or state securities laws.

(Docs. # 21, ¶ 16 and 21-1).

At Plaintiff's request, Defendant agreed to receive payment for a portion of its legal fees through shares of Plaintiff's common stock at par value of $0.001 per share, a value determined by Farley.  (Docs. # 21, ¶ 18 and 21-3, p.2).  On or about February 9, 2016, Defendant prepared a draft subscription agreement for Plaintiff's review.  (Doc. # 21-2).

On the same date, Plaintiff provided Defendant with its draft minutes of the Board authorizing issuance of Plaintiff's shares.  (Doc. # 21-3, pp. 4-6).  Defendant did not draft the minutes and did not advise Plaintiff regarding the substance of the proposed minutes.  The minutes drafted by Plaintiff provided, in relevant part:

> A special meeting of the members of the Board of Directors of Applied Energetics, Inc., a Delaware corporation (the "Corporation"), was held on Wednesday, February 10, 2016 at 4:00 P.M.  In attendance at the meeting, was George P. Farley,

3

<u>constituting a quorum of the members of the Board of Directors</u> (the "Board") of the Corporation.

[   .         .         .         ]

**RESOLVED,** that George P. Farley, the Chief Executive Officer of the Corporation, is hereby authorized to negotiate the terms of the Offerings and any and all documents related thereto; and further

(*Id.*) (emphasis added).  Plaintiff further advised Defendant that Farley was the only member of the Board and that Plaintiff "can use par value as the price per share since it approximates FMV." (Doc. # 21-4).

In the same email, Plaintiff also requested to use Defendant's "form of subscription agreement for other issuances."  (*Id.*, p. 1).  In response, Defendant stated it had no objection to Plaintiff's use of the form of the subscription agreement, "but I cannot say that it will be appropriate for other purchasers."  (*Id.*).

In a February 12, 2016 email, Plaintiff directed Defendant to revise the subscription agreement to increase the number of shares to Defendant to 10,000,000.  (Doc. # 21-5).  The February 12, 2016 email also included Plaintiff's revised draft minutes of the Board authorizing issuance of Plaintiff's shares and increasing the "authorized number of $0.001 par value shares of Plaintiff from 125,000,000 shares to 500,000,000 shares pursuant to the April 10, 2012 stockholder resolution."  (*Id.*).  A copy of the signed minutes of Board was provided to Defendant on February 16, 2016.  (Doc. # 21-7).

In addition to the Board minutes, Plaintiff also provided Defendant with a signed copy of a "Unanimous Consent" issued by Plaintiff's Compensation Committee of the Board (the "Comp Committee") awarding a stock grant to Farley under Plaintiff's 2004 Stock Incentive Plan (the "Comp Resolution").  (*Id.*).   The Comp Resolution stated, in relevant part:

4

The undersigned, being the sole member of the Compensation Committee (the "Committee") of the Board of Directors of Applied Energetics, Inc., a Delaware Corporation (the "Company"), does hereby consent to the adoption of the following resolutions by action taken, pursuant to Section 141(f) of the Delaware Corporation Law, without a meeting[:]

(*Id.*) (emphasis added).  Defendant did not draft the Comp Resolution, and Plaintiff did not request Defendant's advice or assistance in drafting the Comp Resolution.

On or about February 16, 2016, Plaintiff executed the subscription agreement with Defendant (the "Subscription Agreement").  *See* Docs. # 21, ¶ 29 and 21-6.  The Subscription Agreement provided:

1. Payment.  Payment of such subscription price may be made, at the election of the Subscriber: (a) by Subscriber's providing services to the Company after the date hereof having an invoiced value, as reflected on invoices to be issued to the Company after the date hereof, in the amount of $10,000; (b) by good check payable to the order of the Company or by means of a wire transfer of immediately available funds to an account designated by the Company; or (c) by a combination of the methods described in clauses (a) and (b).

[   .        .        .     ]

5. Representations and Warranties of the Company

The Company hereby represents and warrants to the Subscriber that:

(a) Organization, Good Standing and Qualification. The Company is duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite corporate power and authority to own and operate its property and assets and to carry on its business as currently proposed to be conducted, to execute and delivery the Transaction Documents, **to issue and sell the Common Shares**, **and to carry out the provisions of this Agreement.** The Company is duly qualified to transact business and is in good standing in each jurisdiction in which the failure so to qualify would have a material adverse effect on its properties, financial condition or its business as currently proposed to be conducted.

[   .        .        .     ]

(c) **Authorization.** All corporate action on the part of the Company and its officers, directors and stockholders necessary for the authorization, execution and delivery of this Agreement, the performance of all obligations

5

**of the Company hereunder, and the authorization, issuance, sale and delivery of the Common Shares being sold hereunder have been taken or will be taken prior to issuance, and this Agreement constitute valid and legally binding obligations of the Company, enforceable in accordance with their respective terms[.]**

[   .       .       .       ]

**(l)      <u>Access to Counsel; Voluntary Execution.</u>  Each party hereto acknowledges that it understands the terms of this Agreement, that it has consulted with (or has been advised of its right to consult with) an attorney of its choosing in connection with the negotiation of this Agreement, and that it is entering into this Agreement knowingly and voluntarily and without duress, coercion or undue influence of any kind.**

(Doc. # 21-6) (emphasis added).

On February 19, 2016, Plaintiff requested the Defendant draft a legal opinion letter to assist Plaintiff in filing the Form 8K with the SEC.  (Doc. # 21-8).  In support of its request, Plaintiff's Finance Manager, Stephen McCommon ("McCommon"), provided Defendant a legal opinion form for reference.  (*Id.*).

On February 23, 2016, Defendant emailed a proposed certificate of amendment of certificate of incorporation increasing the total number of shares of Plaintiff to 502,000,000.  (Doc # 21-9).

On March 1, 2016, Plaintiff emailed Defendant a copy of Plaintiff's letter to Plaintiff's transfer agent, Continental Stock Transfer & Trust Company ("Continental"), with instructions for the issuance of 10,000,000 shares of common stock to Defendant.  (Doc # 1-10).   Defendant did not draft the letter to Continental and did not provide any advice as to the substance of the letter. In its email, Plaintiff again requested Defendant draft a legal opinion that the issuance of the shares was duly authorized and again offered to supply Defendant a form letter for reference.  (*Id.*). Pursuant to Plaintiff's instructions, on March 5, 2016, Defendant provided to Plaintiff a proposed opinion letter to Continental.  (Doc. # 21-11).

9921268v.4

On March 11, 2016, Plaintiff held a special meeting and issued Board minutes authorizing the issuance of: (i) 5,000,000 shares of common stock to Duft, Bornsen & Fettig, LLP ("DBF Firm") for legal services; and (ii) 1,000,000 shares of common stock to Christopher Rahne ("Rahne") for valuation services.  (Doc. # 21-13).  By email dated March 15, 2016, Defendant requested fully executed subscription agreements between Plaintiff and other subscribers, including Rahne, Stephen McCahon ("McCahon"), the DBF Firm, and Farley.  (Doc. # 21-14).  In its email, Defendant informed Plaintiff, "[a]s I am sure you are aware, if services (as opposed to cash) are intended to constitute the subscriber's payment for the stock, such services must have been rendered prior to the issuance of the stock and must have the reached a value equal to the stated purchase price."  (*Id.*).  Defendant also requested confirmation from Plaintiff that each subscriber had rendered services to Plaintiff equal to the value stated in the subscription agreement since the date of subscription.  (*Id.*).  Plaintiff confirmed that Plaintiff had accrued fees with each subscriber exceeding the value stated in the respective subscription agreement.  (Doc. # 21-15).

On March 22, 2016, McCommon forwarded a letter to Continental with instructions for the issuance of 55,000,000 shares of common stock to multiple parties, including Defendant.  (Doc. # 21-12).  On the same date, Defendant provided Continental a legal opinion in connection with the proposed issuances.  (*Id.*).  The opinion letter stated, in relevant part:

> In conducting our examination, we have assumed the genuineness of all signatures, the legal capacity of all individual signatories, the accuracy of all documents submitted to us as originals and the conformity to originals of all documents submitted to us as copies or electronic versions thereof (whether or not certified). **In addition, we have assumed the factual accuracy of, and without independent investigation have relied upon, the representations, warranties and other information**: (a) provided by the Company to us; and (b) contained in each Subscription Agreement.  In particular, we have relied upon the representation of:...(ii) the Company that each Subscriber has fully paid the purchase price for his or its Subject Securities in accordance with the provisions of the applicable Subscription Agreement.

(*Id.*) (emphasis added).

On April 28, 2016, Plaintiff emailed Rahne requesting a valuation for the 63,000,000 shares of common stock issued by Plaintiff in February 2016, and valuation models for additional shares and options to be issued.  (Doc. # 21-16).  On November 17, 2016, Rahne provided Plaintiff with his report and calculations underlying the Altman Z test for the valuation of Plaintiff's shares.  (Doc. # 21-18).  The report stated that Plaintiff was "in financial distress as of February 16, 2016," using the Altman Z Score Model to determine the probability Plaintiff would encounter bankruptcy based upon Plaintiff's December 31, 2015 financial statements and stock price as of February 16, 2016.  (*Id.*).  The November 2016 report did not state a value or price for Plaintiff's stock.

On January 23, 2017, Rahne provided a revised report to Plaintiff.  (Doc. # 21-19).  The revised report stated:

> The average daily trading volume of Applied Energetics' common stock for the six month period prior to February 16, 2016 was 84,600 shares, and the average closing price of the shares during the same period was .003.  The median daily trading volume for this period was 20,700 shares.  Based on the median trading volume, the time that would be incurred to dispose of 20 million shares would be 5 years.  However, on 22 percent of the trading days of the aforementioned period, no shares traded…
>
> **The application of the aforementioned weights produced a conclusion of a fair market value of .001**.  The aforementioned value approximates the price which shares were issued to non-affiliated professionals, George Farley and Stephen McCahon.

(*Id.*) (emphasis added).

Plaintiff commenced this legal malpractice action on or about February 8, 2019, alleging misconduct and breach of fiduciary duty and standard of care arising out of Plaintiff's retention of Defendant for the period of 2016 to 2018.  (Doc. # 1, ¶ 1). Pursuant to the Court's Order dated February 11, 2019, Plaintiff was required to amend its complaint to sufficiently allege subject matter jurisdiction.  (Doc. # 7).  On February 20, 2019, Plaintiff filed a first amended complaint.

8

(Doc. # 8).  Pursuant to the Court's Order dated April 30, 2019 (Doc. # 18), the Plaintiff responded to Defendant's motion by filing the instant second amended complaint on May 15, 2019.  (Doc. # 21).  On May 29, 2019, Defendant moved the Court for an extension of time to respond to the Second Amended Complaint, which was granted by the Court's Order dated May 31, 2019.  (Docs. # 22-23).  On June 27, 2019, Defendant moved the Court for a second extension of time to respond to the Complaint, which was granted by Order dated July 1, 2019.  (Docs. # 24-25).

## ARGUMENT

### I.    Plaintiff Fails to State a Claim for Legal Malpractice

The elements of a cause of action for legal malpractice are well-settled.  In order to state a cause of action for legal malpractice, a plaintiff must show "that an attorney-client relationship existed, that a duty was owed, that there was a wrongful act or omission which was the proximate cause of the damages, and the measure of those damages."  *Hoffenberg v. Meyers,* No. 99 Civ. 4674, 2002 U.S. Dist. LEXIS 425, 2002 WL 57252 (S.D.N.Y. 2002); *Leder v. Spiegel*, 9 N.Y.3d 836, 837, 872 N.E.2d 1194, 840 N.Y.S.2d 888 (2007); *see also Allen v. Antal*, 12-Civ. 8024 (NSR), 2015 U.S. Dist. LEXIS 123584, 2015 WL 5474080 (S.D.N.Y. Sep. 15, 2015), *aff'd Allen v. Antal,* 665 Fed. Appx. 9 (2d Cir. 2016).  Here, the Complaint fails to meet any of the requirements for maintaining a cause of action for legal malpractice because: (i) Plaintiff has not alleged any facts which, if true, would constitute a breach of the standard of care; and (ii) Plaintiff fails to allege, beyond mere legal conclusions, that Defendant's conduct was a proximate cause of any actual damages suffered by Plaintiff.  Accordingly, Plaintiff's claim for legal malpractice against the Defendant should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A.  Defendant Did Not Owe a Duty to Plaintiff and Did Not Proximately Cause Plaintiff's Alleged Injury in Connection with the Retainer Agreement

Plaintiff alleges that Defendants committed malpractice when it failed to investigate

9

whether the par value of $0.001 per share was the fair market value for Plaintiff's common stock when Plaintiff issued 10,000,000 shares as partial payment for Defendant's legal services.  (Doc. # 21, ¶¶ 2, 86.a).   The facts alleged by Plaintiff clearly demonstrate that the Subscription Agreement was merely a negotiation of the fees to be paid to the Defendant as part of the Retainer Agreement.   *See* Doc. # 21, ¶ 18 ("Farley, on behalf of AE, negotiated with Dennis Stein ('Stein')…an agreement to pay for $5,000 worth of Stein Riso's legal services via the payment of AE stock.").   The New York Court of Appeals has held that, in negotiating a retainer agreement with a client, the law firm is not "representing" the client in such transaction and accordingly does not owe the client a duty from which a claim of legal malpractice can be asserted.   *See Matter of Lawrence,* 24 N.Y.3d 320, 342, 23 N.E.3d 965, 998 N.Y.S.2d 698 (2014).

> In *Matter of Lawrence*, the Court of Appeals, stated:

> Simply put, when an attorney engages in a financial transaction *with* a client, by charging a fee or, as in this case, accepting a gift, the attorney is not representing the client in that transaction *at all*, much less representing the client continuously with respect to "the particular problems (conditions) that gave rise to plaintiff's malpractice claims" against the attorney.  The attorney and client are engaging in a transaction that is separate and distinct from the attorney's rendition of professional services on the client's behalf.

24 N.Y.3d at 342 (emphasis in original) *citing Williamson v. PricewaterhouseCoopers, LLP*, 9 N.Y.3d 1, 872 N.E.2d 842, 840 N.Y.S.2d 730 (2007).  The Court of Appeals further stated, "[w]hen a client pays a lawyer or gives the lawyer a gift, the lawyer is not-in that transaction- 'perform[ing] legal services on the [client's] behalf.'"  *Matter of Lawrence,* 24 N.Y.3d at 343 *quoting Greene v. Greene*, 56 N.Y.2d 86, 95, 36 N.E.2d 496, 451 N.Y.S.2d 46 (1982).  Based on the *Lawrence* court's holding, Defendant was not representing Plaintiff during the negotiation of the Subscription Agreement, which was simply an extension of the Retainer Agreement, and as such, Defendant did not owe a duty to Plaintiff at such time, including any duty to obtain an independent valuation

10

of Plaintiff's proposed price per share.

The Second Amended Complaint also alleges that Defendant failed to advise Plaintiff to consult independent counsel to review the Subscription Agreement and did not obtain a written waiver of potential conflict from Plaintiff.  (Doc. # 21, ¶ 20).  However, the Subscription Agreement explicitly states that "[e]ach party hereto acknowledges that it understands the terms of this Agreement, that it has consulted with (or has been advised of its right to consult with) an attorney of its choosing in connection with the negotiation of this Agreement, and that it is entering into this Agreement knowingly and voluntarily and without duress, coercion or undue influence of any kind."  (Doc. # 21-6, Section 6(l)).  The Complaint does not contain any allegations disputing that Farley, Plaintiff's authorized representative, executed the Retainer Agreement.  Accordingly, Plaintiff's conclusory and unsupported allegations that it was not advised to consult independent counsel is utterly refuted by the documentary evidence.

Lastly, it is undisputed that Plaintiff, through its designated representative, Farley, executed the Subscription Agreement. (Doc. # 21-6).  The documentary evidence establishes, and Plaintiff concedes, that it was Plaintiff's designated representative himself that suggested the Subscription Agreement "use par value as the price per share since it approximates FMV."  (Docs. # 21, ¶ 23 and 21-4).   The Complaint does not allege that Defendant made any counter or negotiation to Plaintiff's proposed price per share, and the documentary evidence clearly shows that Defendant accepted Plaintiff's suggestion for Plaintiff's payment of Defendant's fees.  Plaintiff's own Complaint concedes this point.  *See* Doc. # 21, ¶ 28 ("[w]ithout any negotiation or request for such increase from Stein Riso").  As such, any purported injury incurred by Plaintiff in connection with the price per share was proximately caused by Plaintiff's own conduct, not Defendant.

Based on the foregoing, Plaintiff has not alleged that Defendant owed any duty to Plaintiff

11

in connection with the drafting of the Subscription Agreement or that Defendant proximately caused Plaintiff any injury in connection with the Subscription Agreement.  As such, Plaintiff's claim for legal malpractice must be dismissed.

### B.  Plaintiff Fails to Allege a Breach of Duty by Defendant

To establish negligence in a legal malpractice action, Plaintiff must allege facts showing that the attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession." *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328m 337 (2d Cir. 2006); *AmBase Corp. v. Davis Polk & Wardwell,* 8 N.Y.3d 428, 434, 866 N.E.2d 1033, 1036, 834 N.Y.S.2d 705, 708 (2007).  Generally, an attorney may only be held liable for "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." *Achtman,* 464 F.3d at 337 (*quoting Bernstein v. Oppenheim & Co.*, 160 A.D.2d 428, 554 N.Y.S.2d 255 (1st Dep't 1990)).  Plaintiff does not allege that the work performed by Defendant, *i.e.*, the drafting or filing of documents for the issuance of stock and the filing with the SEC, fell below the applicable standard of care.  Instead, the entirety of Plaintiff's claims rely on the Defendant's purported failure to investigate (Doc. # 21, ¶¶ 86.a, d, o-q), inform (*Id.*, ¶¶ 86.e-f, i-j), or advise (*Id.*, ¶¶ 86.c, g-h, q) Farley or Plaintiff on what Plaintiff unilaterally perceives Defendant should have done.  However, despite Plaintiff's attempts, the "duties" Plaintiff alleges in its Complaint do not set forth any breach of the standard of care by Defendant.

In *Holtkamp v. Parklex Assoc.*, 30 Misc.3d 1226(A), 926 N.Y.S.2d 944 (Sup. Ct., Kings Cty. Feb. 22, 2011), plaintiff alleged, *inter alia,* that the defendant attorneys had breached their duty when they failed to take the necessary steps to prevent defendant bad actor from wasting the proceeds of sale and that, but for defendant attorneys' breach of duty, defendant bad actor would

not have been able to carry out his bad acts.  The court, in dismissing the claim against the defendant attorneys, stated that "attorneys acting in good faith are not liable for the actions of their clients…[m]oreover, an attorney has no duty to investigate and discover alleged fraud perpetrated upon its client or 'to draw up a list of possible misuses…and then unleash a team of investigators, lawyers, and accountants to see if any misuse theory held water'."  *Id.* (*quoting Schimenti v. Whitman & Ransom*, 208 A.D.2d 470, 617 N.Y.S.2d 742 (1st Dep't 1994)).  These facts are similar to the instant action, wherein Plaintiff is attempting to impose liability on Defendant for (a) failing to investigate, advise, or inform on matters for which Defendant had no duty to perform; or (b) based upon any of the alleged bad acts it attributes to Farley.

In the instant action, the documentary evidence establishes that Defendant was not asked to advise or investigate the substance of Plaintiff's agreements or transactions with any third-party vendor.  Those transactions were negotiated solely by Plaintiff, through its designated representative, Farley.  Plaintiff requested specific tasks to be performed by Defendant as demonstrated through Plaintiff's various email requests for the drafting of a certificate of amendment to the certificate of incorporation and the drafting of an opinion letter to Plaintiff's transfer agent in connection with the issuance of stock.  The Complaint does not state that the composition or substance of these documents breached any standard of care.  Plaintiff's attempts to create and impose other duties upon Defendant outside of the scope of services for which Defendant was retained does not give rise to a cause of action for legal malpractice.

## II.   Violations of Rules of Professional Conduct Do Not Give Rise to a Cause of Action and Are Duplicative of the Legal Malpractice Claim

Plaintiff's claims asserting violation of the RPC are insufficient to sustain a claim for legal malpractice.  *See Arga Capital, Inc. v. Kreiner LLC*, 2018 N.Y. Misc. LEXIS 664, *11 (Sup. Ct., New York Cty. Feb. 23, 2018) *citing Fletcher v. Boies, Schiller & Flexner LLP*, 140 A.D.3d 587,

587, 35 N.Y.S.3d 28 (1st Dept. 2016) (a violation of a disciplinary rule, without more, is not sufficient to support a legal malpractice claim); *Esposito v Noto*, 132 A.D.3d 944, 945, 19 N.Y.S.3d 300, 302 (2d Dep't 2015); *see also* Rules of Professional Conduct, Preamble ("Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.").   Legal malpractice actions based upon a claimed conflict of interest are at most a violation of an attorney's ethical responsibilities and cannot be used to support a cause of action for damages.  *Mills v. Pappas,* 174 A.D2d 780, 782, 570 N.Y.S.2d 726 (3d Dep't 1991) ("[t]o the extent that the alleged malpractice is based upon a claimed conflict of interest… any such conflict of interest is at most a violation of [the defendant attorneys'] ethical responsibilities, an insufficient basis for imposing liability in favor of a former client.") *citing Brown v. Samalin & Block*, 155 A.D.2d 407, 408, 547 N.Y.S.2d 80 (2d Dep't 1989).

Plaintiff alleges that Defendant violated RPC 1.8, which addresses an attorney entering into a business transaction with its client.  However, there is no prohibition against an attorney entering into a business transaction with its client.  *See Greene v. Greene*, 56 N.Y.2d at 92 (an attorney is not prohibited from entering into a contract with a client, in fact, he must do so with respect to his retainer for legal services).  Plaintiff's allegations of a violation of RPC 1.8 rely solely on the basis that Defendant had a duty to determine the value of the shares before accepting them as payment for their fees.  However, as demonstrated*, see* Point I.A., Defendant did not owe Plaintiff any such duty in the negotiation of Defendant's fees or payment of such fees.  Plaintiff's attempts to place non-existent duties upon Defendant are without merit and unsupported by any legal authority.  Further, as established *supra,* Plaintiff dictated the price per share, with no input from or influence by Defendant, and Plaintiff acknowledged in the Subscription Agreement that it was advised, in writing, to seek independent counsel concerning the transaction.  Accordingly,

Plaintiff's claims that Defendant did not comply with the disclosure protection provided by RPC 1.8 is refuted by the documentary evidence annexed to the Amended Complaint.

Moreover, even if the Retainer Agreement or the Subscription Agreement was entered into without the disclosure protections required under the RPC, it does not automatically render the agreement unenforceable or entitle Plaintiff to rescission. *See Friedman v. Kuczkir,* 272 F.Supp.3d 613, 632-633 (S.D.N.Y. 2017) ([a]n agreement between an attorney and a client will be voided only if it is obtained by the lawyer's fraud or undue influence or if it appears the attorney got the better of the bargain, and that the client was not fully aware of the consequences or the client's confidence in the attorney was exploited).  In *Friedman,* the Court found no exploitation of the client's confidence in the negotiation of a commission fee with the attorney.  The Court found that the client had significant experience in dealing with attorneys; moreover, the client actively engaged in the negotiation of the agreed-upon commission fee.  The Court also found that the attorney took no affirmative steps to benefit himself at the expense of the client in entering the commission agreement.  *Id.*  Similar to the facts in *Friedman,* the documentary evidence clearly establishes that Farley "actively engaged" in the determination of the fee arrangement and price per share that was utilized in the Subscription Agreement.  Furthermore, Plaintiff's Complaint does not allege any purported affirmative steps by Defendant in connection with the fee arrangement, including the Subscription Agreement.

Plaintiff also alleges that Defendant violated RPC 1.5, which prohibits an attorney from making an agreement for, or charging or collecting, an excessive fee.  Similar to the facts underlying *Friedman*, Plaintiff, through Farley, dictated the price per share that was utilized in the Subscription Agreement, and Defendant had no participation in or took any steps to influence Plaintiff's decision.  (Doc. # 21-4).  Plaintiff provides no basis to allege that the fee was in any

15

way excessive.  Plaintiff does not dispute that Defendant rendered legal services to Plaintiff. Pursuant to the price dictated by Plaintiff, Defendant received 10,000,000 shares of Plaintiff stock at $0.001 per share, par value.  (Doc. # 21, ¶¶ 110-111).  To date, Defendant has not received any further payments from Plaintiff for services rendered, although such payments remain outstanding. *See* Doc. # 21, ¶ 115).  Accordingly, despite having only paid the equivalent of $10,000 for Defendant's legal services, Plaintiff alleges that Defendant has charged an "excessive fee" in violation of RPC 1.5.  The allegations in Plaintiff's own Complaint clearly demonstrate otherwise.

This Court has recognized that claims for disgorgement of fees and rescission based on the same operative facts as the legal malpractice claim are duplicative of and subject to dismissal.  *See Serova v. Teplen,* No. 05-cv-6748 (HB), 2006 U.S. Dist. LEXIS 5781 (S.D.N.Y. Feb. 16, 2006). Plaintiff's claims for violation of RPC 1.5 and 1.8 arise from Defendant's receipt of shares at a par value of $0.001 per share as payment for services rendered pursuant to the Subscription Agreement.  *See* Doc. # 21, ¶¶ 109-128.  This is the same exact conduct Plaintiff alleges as the basis for its legal malpractice claim against Defendant and merits dismissal.  New York courts enforce the proposition that duplicative claims must be dismissed.  *See Sage Realty Corp. v. Proskauer Rose*, 251 A.D.2d 35, 39, 675 N.Y.S.2d 14 (1st Dep't 1998); *Palmeri v. Wilkie Farr & Gallagher LLP,* 156 A.D.3d 564, 567, 69 N.Y.S3d 267 (1st Dep't 2017); *Keness v Feldman, Kramer & Monaco*, P.C., 105 A.D.3d 812, 813-814, 963 N.Y.S.2d 313 (2d Dep't 2013); *Miazga v. Assaf*, 136 A.D.3d 1131, 924 N.Y.S.2d 666 (3d Dep't 2016) (*quoting DiTondo v. Meagher*, 85 A.D.3d 1385, 1385, 924 N.Y.S.2d 666 (3d Dep't 2011) ("In the event that a claim 'arises out of the same facts as an asserted legal malpractice cause of action and does not allege distinct damages,' that claim is deemed 'duplicative of the malpractice claim.'").

New York law is clear that "violations of the Rules of Professional Conduct give rise to no private right of action." *Anderson v. Greene,* No. 14 Civ, 10249 (KPF), 2016 U.S. Dist. LEXIS 105671 at *67 (S.D.N.Y. Aug. 10, 2016) *citing Jiau v. Hendon*, No. 12 Civ. 7335 (PAE), 2014 U.S. Dist. LEXIS 18471 at *6 (S.D.N.Y. 2014) ("[T]hat [Plaintiff] has alleged violations of New York's Rules of Professional Conduct does not… rescue [his] legal malpractice claim. The ethical rules governing lawyers have their own means of enforcement; a violation of such rule does not, without more, give a client or former client a malpractice claim."). Based on the foregoing, Plaintiff's claims for violation of RPC 1.5 and 1.8 should be dismissed because they fail to state a cause of action for which this Court can provide a remedy and are duplicative of Plaintiff's legal malpractice cause of action.

### III.    Plaintiff Fails to State a Cause of Action for Aiding and Abetting Breach of Fiduciary Duty

Plaintiff next attempts to assert a claim for aiding and abetting a breach of fiduciary duty by a lawyer, a claim regularly rejected by New York courts except for the most extreme situations. Absent some extreme conduct such as "back dating" or "forging documents" by the lawyer, New York courts have rejected such claims. Here, the Complaint fails to allege any of the requisite extreme misconduct by Stein Riso.

It is well settled that "[a] claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Kaufman v Cohen*, 307 AD2d 113, 125, 760 N.Y.S.2d 157 (1st Dep't 2003). "A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." *Id*. at 126. "Actual knowledge, as opposed to merely constructive knowledge, is required and a plaintiff may not merely rely on conclusory and sparse allegations

that the aider or abettor knew or should have known about the primary breach of fiduciary duty." *Bullmore v. Ernst & Young Cayman Is.*, 45 A.D.3d 461, 465, 846 N.Y.S.2d 145 (1st Dep't 2007); *see also Global Mis. & Metals Corp. v. Holme*, 35 A.D.3d 93, 101-102, 824 N.Y.S.2d 210 (1st Dep't 2006). Plaintiff's allegations that Farley breached his fiduciary duty to Plaintiff is currently being litigated in Delaware Court of Chancery. *See* Doc. # 21, ¶ 3. However, even if the Complaint has sufficiently alleged a breach of duty by a fiduciary (i.e. Farley) to Plaintiff, which Defendant denies, Plaintiff cannot establish the required knowledge or substantial assistance to sustain a cause of action for aiding and abetting against Defendant.

In the few cases that New York courts have found attorney liability for aiding and abetting, the holding is based upon only the most egregious of facts and circumstances. In *Wimbledon Fin. Master Fund, Ltd. v. Weston Captial Mgt. LLC,* Index No. 653468/2015, 2017 NY Slip Op 31515(U) (Sup. Ct., New York Cty. July 17, 2017), the court denied a motion to dismiss aiding and abetting fraud based upon allegations that the attorney defendant had drafted the fraudulent, backdated contracts that made the subsequent injuries possible. Similarly, in *Oster v. Kirschner*, 77 A.D.3d 51, 905 N.Y.S.2d 69 (1st Dep't 2016), the First Department reinstated plaintiff's causes of action for, *inter alia*, aiding and abetting fraud. In *Oster*, the defendant attorneys drafted private placement memoranda soliciting investment in an admitted Ponzi scheme for a company that defendants knew was being run by convicted felons and were banned from the securities industry. These limited circumstances where an attorney was found liable for aiding and abetting are clearly distinguishable from the instant allegations against Stein Riso.

The Complaint alleges that Defendant knowingly: (1) provided forms and legal work to Farley used to issue stock at par value; (2) prepared, reviewed, and commented on documents Farley needed consummate transactions that breached his fiduciary duty; (3) assisted Farley with

issuance of stock despite allegedly knowing that no valuation had been performed; (4) assisted Farley with transfer of stock to AnneMarieCo, LLC; and (5) performed all of the above with knowledge that Farley was breaching his fiduciary duties to Plaintiff.  (Doc. # 21, ¶¶ 98.a-e). Plaintiff's conclusory allegations that Defendant knew Farley was purportedly breaching his fiduciary duty are without merit.  The documentary evidence appended to the Complaint set forth that Farley, the authorized and designated representative of Plaintiff, provided Defendant with all the requisite documentation, including Board minutes authorized by a quorum of the Board, committee authorizations, and subscription agreements, along with supplemental information provided by Farley himself that the issuance of stock and other transactions were duly authorized by the Plaintiff.  "[A]ccepting one's client's view as to the business decision to be made is not knowledge that one's client was doing anything wrong."  *ICP Strategic Credit Income Master Fund Ltd. v. DLA Piper LLP (US) (In re ICP Strategic Credit Income Fund Ltd.),* Case. Nos. 13-12116 (REG), 14-01835 (REG), 2015 Bankr. LEXIS 3128 at *44-45 (Bankr. S.D.N.Y. Sep. 15, 2015).

To assert viable claims for aiding and abetting a breach of fiduciary duty, Plaintiff must show that the attorney knew <u>more than the facts generally surrounding the transaction</u>, but that the attorney knew that he was assisting <u>something that was wrong</u>.  *Id.* at *45-46 (emphasis added and in original), *citing Oster v. Kirschner,* 77 A.D.3d 51, 52-27, 905 N.Y.S.2d 69, 70-73 (1st Dep't 2010) and *Kaufman v. Cohen*, 207 A.D.2d at 125; *see also Samuel M. Feinberg Testamentary Trust v. Carter*, 652 F.Supp. 1066, 1082 (S.D.N.Y. 1987) ("actual knowledge, not mere notice or unreasonable awareness, is…essential.").  New York "has not adopted a constructive knowledge standard for imposing aiding and abetting liability."  *Kolbeck v. LIT Am., Inc.,* 939 F.Supp. 240, 246 (S.D.N.Y. 1996).  Plaintiff's Complaint lacks any allegations that Defendant <u>knew</u> it was

assisting Farley in any purported wrongful conduct.  Plaintiff's conclusory allegations of knowledge are insufficient to establish a cause of action for aiding and abetting against the Defendant.

Similarly, the Complaint fails to set forth sufficient allegations that Defendant substantially assisted Farley in his purported breach of fiduciary duty.  There are no allegations that Defendant had any role in the issuance of stock or transfers other than as counsel performing ordinary legal services.  Further, Plaintiff does not allege that Defendant proposed any of the actions taken by Farley, and the documentary establishes that it was Farley that determined the course of conduct and strategic decisions taken by Plaintiff, not the Defendant.   *See In re ICP Strategic Credit Income Fund Ltd.*, 2015 Bankr. LEXIS 3128 at *47 ("courts must be wary of regarding the attorney's legal advice, or the attorney's interfacing with others, as substantial assistance in the absence of allegations establishing something more – as there is a distinction between rendering substantial assistance to the breach of duty as opposed to the person committing the breach."); *Bullmore v. Ernst & Young Cayman Is.*, 45 A.D.3d at 464.  Mere rendering of the legal services for which Defendant was retained does not amount to "substantial assistance" as required to establish a cause of action for aiding and abetting.  Based on the foregoing, Plaintiff's claim must be dismissed.

## IV.      Plaintiff Fails to State a Claim for Securities Fraud

Plaintiff alleges that, at the time Defendant agreed to receive Plaintiff's shares at par value as payment for its services, Defendant was in possession of material non-public information about Plaintiff's plans to restart its business operations, exit shell status and enter into agreements.  (Doc. # 21, ¶ 133).  Plaintiff's allegations fail to give rise to a violation of § 10(b) or Rule 10b-5 as Plaintiff does not allege that: (1) Defendant was privy to any material non-public information about

9921268v.4

Plaintiff to which Plaintiff was not already aware; or (2) Defendant made any material representations or omissions upon which Plaintiff relied. Plaintiff's failure to allege or establish these necessary elements require a dismissal of Plaintiff's securities fraud cause of action.

The essential elements of a § 10(b) or Rule 10b-5 claim for damages are: (1) defendant acted with scienter; (2) a misstatement or omission by the defendant; (2) as to a material fact; (3) upon which plaintiff relied; (4) which caused plaintiff to suffer damages; (5) in connection with the purchase or sale of securities. *Morin v. Trupin*, 778 F.Supp. 711 (S.D.N.Y. 1991); *see also Lloyd v. Indus. Bio-Test Laboratories, Inc.*, 454 F.Supp. 807, 810 (S.D.N.Y. 1978)); *Du Pont v. Brady*, 636 F.Supp. 1067, 1072 (S.D.N.Y. 1986). Furthermore, pursuant to Fed. R. Civ. P. 9(b), allegations of fraud must be pleaded with particularity. *See Eternity Global Master Fund Ltd.v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 187 (2d Cir. 2004). "Particularity" requires that the Complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made; and (4) explain why the statements (or omissions) are fraudulent." *Id. quoting Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).

It is undisputed that Farley was Plaintiff's authorized representative at the time Defendant was retained. Despite Plaintiff's allegation that Defendant was privy to material non-public information about Plaintiff's plans, Plaintiff fails to allege what such information was, how Defendant misstated or omitted such material non-public information, or that Plaintiff relied on any such purported misstatement or omission by Defendant. The emails and exhibits annexed to the Complaint clearly show that any "material, non-public information" about Plaintiff and any potential business strategy was provided by Plaintiff's authorized representative, Farley, to the Defendant, and not vice versa. If Farley was in possession of any such material non-public

information, it would be equally imputed to Plaintiff since Farley was Plaintiff's authorized representative.

In its own pleading, Plaintiff admits that Plaintiff was aware of such information which was "treated as confidential by AE and was not made public until months later." (Doc. # 21, ¶ 134). Plaintiff further concedes that "this information was known to AE's sole remaining officer and director" and they both knew" this material and non-public information. (*Id.*) Accordingly, to the extent Plaintiff is alleging that the Subscription Agreement was based upon an omission or misrepresentation of material information by the Defendant does not make any sense, because no such omissions or representations were ever made by the Defendant and, even if they were, Plaintiff did not rely on such information when entering into the Subscription Agreement. Nowhere in the Complaint does Plaintiff allege that it relied on any such omissions or misrepresentations by Defendant. To the extent Plaintiff is alleging securities fraud by the Defendant concerning any other purported sale or purchase of Plaintiff's shares, the Complaint fails to identify any such transactions, because they do not exist.

In attempt to salvage its securities fraud claim against Defendant, the Complaint appears to argue that Defendant's purported fraud was perpetrated upon the Plaintiff's shareholders and "the public", *see* Doc. # 21, ¶ 134, which makes no sense. Plaintiff repeatedly admits that it was aware of the purported material, non-public information. Accordingly, if there was any alleged "fraud" to Plaintiff's shareholders, it was not on the part of Defendant but Plaintiff itself. Further, Plaintiff has no standing to assert a securities fraud cause of action on behalf of the "public" as asserted in its Complaint. *See Abbey v. 3F Therapeutics, Inc.,* No. 06 CV 409 (KMW), 2009 U.S.Dist. LEXIS 111917 (S.D.N.Y. Dec. 2, 2009).

"The purpose of § 10(b) and Rule 10b-5 is to protect persons who are deceived in securities transactions – to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for consideration known to the buyer not to be what it purports to be."  *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984), *cert denied*, 469 U.S. 884 (1984).  "Courts have recognized that the 'fundamental purpose' behind the enactment of the federal securities laws as to require 'full and fair disclosure to participants in securities transactions of the information that would be useful to them in deciding whether to buy or sell securities'."  *Grey v. Gruntal & Co.*, No. 84-cv-5036 (PKL), 1987 U.S. Dist. LEXIS 4031 at 19-20 (S.D.N.Y. May 21, 1987) (quoting *Bochicchio v. Smith Barney, Harris Upham & Co.*, 647 F.Supp. 1426, 1430 (S.D.N.Y. 1986)).  In the instant action, Plaintiff has failed to set forth any allegations that it was deceived by or relied upon any purported omission or misrepresentation by Defendant in entering the Subscription Agreement.  Based on the foregoing, Plaintiff's cause of action for securities fraud must be dismissed.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, it is respectfully submitted that Defendant's motion to dismiss Plaintiff's Second Amended Complaint on the merits and with prejudice[1] made pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) should be granted in its entirety, and the Court Clerk should enter judgment in favor of the Defendant, along with such other and further relief as is just and proper.

Dated:  New York, New York
  July 31, 2019

Respectfully,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:  _____s/Tina C. Ma_____

Joseph L. Francoeur
Tina C. Ma
*Attorneys for Defendant*
*STEIN RISO MANTEL MCDONOUGH, LLP*
150 East 42nd Street
New York, New York 10017
p. (212) 490-3000
f. (212) 490-3038
e: joseph.francoeur@wilsonelser.com
e. tina.ma@wilsonelser.com

---

[1] As this is Plaintiff's Second Amended Complaint, dismissal should be granted without leave to amend. *See Technomarine SA v. Gilports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014).