UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
APPLIED ENERGETICS, INC.,                                          :
                                                                   :
                                          Plaintiff,               :  Case No.: 1:19-cv-01232-AJN
                                                                   :
         - vs. -                                                   :
                                                                   :
STEIN RISO MANTEL MCDONOUGH, LLP,                                  :
                                                                   :
                                          Defendant.               :
                                                                   :
------------------------------------------------------------------- x


**<u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 9(b) and 12(b)(6)</u>**

WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
*Attorneys for Defendant*
*STEIN RISO MANTEL MCDONOUGH, LLP*
Joseph L. Francoeur
Tina C. Ma
150 East 42nd Street
New York, New York 10017
p. (212) 490-3000
f. (212) 490-3038
e: joseph.francoeur@wilsonelser.com
e. tina.ma@wilsonelser.com

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ...................................................................................................................... 5

    I.      Plaintiff Fails to State a Claim for Legal Malpractice ........................................... 5

    II.     Violations of Rulppes of Professional Conduct Do Not Give Rise to a Cause of Action and Are Duplicative of the Legal Malpractice Claim ................................ 7

    III.    Plaintiff Fails to State a Cause of Action for Aiding and Abetting Breach of Fiduciary Duty ...................................................................................................... 9

    IV.    Plaintiff Fails to State a Claim for Securities Fraud ........................................... 12

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buckley v. Deloitte & Touche USA LLP*,
    2007 U.S. Dist. LEXIS 37107 (S.D.N.Y. May 21, 2007) ...................................................... 13

*Bullmore v. Ernst & Young Cayman Is.*,
    45 A.D.3d 461, 846 N.Y.S.2d 145 (1st Dep't 20007) ............................................................. 11

*Center v. Hampton Affiliates, Inc.*,
    66 N.Y.2d 782, 488 N.E.2d 828, 497 N.Y.S. 898 (N.Y. 1985) ............................................... 14

*Du Pont v. Brady*,
    636 F.Supp. 1067 (S.D.N.Y. 1986) ...................................................................................... 13

*Friedman v. Kuczkir*,
    272 F.Supp.3d 613 (S.D.N.Y. 2017) ...................................................................................... 9

*Goldson v. Walker*,
    65 A.D.3d 1084. 885 N.Y.S.2d 133 (2d Dep't 2009) ............................................................. 11

*Greene v. Greene*,
    56 N.Y.2d 86, 436 N.E.2d 496, 451 N.Y.S.2d 46 (N.Y. 1982) ................................................ 8

*Holtkamp v. Parklex Assoc.*,
    30 Misc.3d 1226(A), 926 N.Y.S.2d 344, 2011 NY Slip Op 50208(U) (Sup. Ct., Kings Cty.
    Feb. 22, 2011) ................................................................................................................ 3, 5

*ICP Strategic Credit Income Master Fund Ltd. v. DLA Piper LLP (US)*
    *(In re ICP Strategic Credit Income Fund Ltd.)*,
    Case. Nos. 13-12116 (REG), 14-01835 (REG),
    2015 Bankr. LEXIS 3128 (Bankr. S.D.N.Y. Sep. 15, 2015) ............................................. 11, 12

*JP Morgan Chase Bank v. Winnick*,
    406 F.Supp.2d 247 (S.D.N.Y. 2005) ................................................................................ 10, 11

*Kaufman v. Cohen*,
    307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) ........................................................... 10

*Keness v. Feldman, Kramer & Monaco*, P.C.,
    105 A.D.3d 812, 963 N.Y.S.2d 313 (2d Dep't 2013) .............................................................. 8

*Kolbeck v. LIT Am., Inc.*,
    939 F.Supp. 240 (S.D.N.Y. 1996) ....................................................................................... 10

*Lloyd v. Indus. Bio-Test Laboratories, Inc.*,
    454 F.Supp. 807 (S.D.N.Y. 1978) ............................................. 13

*Matter of Lawrence*,
    24 N.Y.3d 320, 23 N.E.3d 965, 998 N.Y.S.2d 698 (2014) ...................... 1, 5

*Miazga v. Assaf*,
    136 A.D.3d 1131, 924 N.Y.S.2d 666 (3d Dep't 2016) ............................ 8

*Morin v. Trupin*,
    778 F.Supp. 711 (S.D.N.Y. 1991) ............................................ 13

*Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft LLP*,
    26 N.Y.3d 40, 41 N.E.3d 353, 19 N.Y.S.3d 488 (2015) ......................... 7

*Oster v. Kirschner*,
    77 A.D.3d 51, 905 N.Y.S.2d 69 (1st Dep't 2010) ............................. 10

*Palmeri v. Wilkie Farr & Gallagher LLP*,
    156 A.D.3d 564, 69 N.Y.S3d 267 (1st Dep't 2017) ............................. 8

*Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    721 F.3d 54 (2d Cir. 2013) ................................................. 13

*Sage Realty Corp. v. Proskauer Rose*,
    251 A.D.3d 35, 675 N.Y.S.2d 14 (1st Dep't 1998) ............................. 7

*Schimenti v. Whitman & Ransom*,
    208 A.D.2d 470, 617 N.Y.S.2d 742 (1st Dep't 1994) ......................... 3, 5

*Serova v. Teplen*,
    No. 05-cv-6748 (HB), 2006 U.S. Dist. LEXIS 5781 (S.D.N.Y. Feb. 16, 2006) ...... 7

*Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)*,
    No. 18-cv-6658 (JSR), 2019 U.S. Dist. LEXIS 104562 (S.D.N.Y. June 21, 2019) ... 14

*Walsh v. Rigas*,
    No. 17 Civ. 4089 (NRB), 2019 U.S. Dist. LEXIS 10959 (S.D.N.Y. Jan. 23, 2019) ... 13

*Weisman, Celler, Spett & Modlin v. Chadbourne & Parke*,
    271 A.D.2d 329, 706 N.Y.S.2d 414 (1st Dep't 2000) ........................... 5

*Zarin v. Reid & Priest*,
    184 A.D.2d 385, 585 N.Y.S.2d 379 (1st Dep't 1992) ........................... 7

**Rules**

Fed. R. Civ. P. § 12(b)(6) ..................................................... 1, 15

iii

Fed. R. Civ. P. § 9(b) ........................................................................................................... 1, 15

RPC 1.5 ............................................................................................................................... 3, 8, 9

RPC 1.8 ............................................................................................................................... 3, 8, 9

Rule 10b-5 ......................................................................................................................... 4, 12, 13

This memorandum of law is submitted on behalf of Defendant, STEIN RISO MANTEL MCDONOUGH, LLP ("Defendant" or "Stein Riso"), in reply to the opposition filed by Plaintiff APPLIED ENERGETICS, INC. ("Plaintiff" or "AE") and in further support of Stein Riso's motion to dismiss Plaintiff's Second Amended Complaint (the "SAC"), on the merits and with prejudice, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's opposition confirms that the SAC fails to state any valid cause of action, and also that it is subject to dismissal at this time. While there are several claims, there are essentially two primary claims of breach of duty, yet neither one presents a situation where Stein Riso owed any duty whatsoever. Plaintiff is simply wrong that the Court cannot grant a motion to dismiss at the pre-answer stage where duty is not sufficiently pled. Absent sufficient allegations showing duty, no claim against a lawyer can survive a motion to dismiss.

The first alleged duty is that Stein Riso owed a duty to AE when its compensation was set, as the opposition claims this "was a lucrative deal and Stein Riso knew it." This is totally false, and it is black letter law that no such duty exists. The opposition tries to misdirect the court's attention and claims that random "duties" are owed at retention, but the duty in question in this case is the quantum of compensation Stein Riso received for its services. There is no duty on behalf of lawyer to its client when dealing with its compensation, nor could there be. The Court of Appeals in *Matter of Lawrence* has made this crystal clear. Realizing this, the opposition also complains that Stein Riso owed "a duty" because it billed for drafting the subscription agreement. Plaintiff's opposition fails to note that this "duty" is not a duty *as to the quantum Stein Riso was paid* at all. The billing records indicate simply that AE did not have a form subscription agreement, and Stein Riso prepared one at the client's request. If there was a problem with the form of the

subscription agreement (not the quantum Stein Riso was paid) then perhaps Stein Riso could be held liable for an error in the form.  Notably, there are *no allegations anywhere in the SAC* that the form subscription agreement was incorrect, exposing this argument as nothing more than a red-herring.  Again, the claim here is the quantum Stein Riso was paid, and whether or not the compensation was "lucrative" or not, the fact remains Stein Riso owed no such duty to AE.

The opposition moves to the second alleged duty that "Stein Riso had a duty to advise Farley that issuing shares to himself as AE's sole officer or director was self-dealing and needed to be approved by disinterested directors, disinterested shareholders or else be entirely fair to AE." (Plaintiff's Opposition, p. 7).  Again, there is no such duty.  Stein Riso's opinion letter stated that it was represented to Stein Riso that the parties receiving shares (the "Subscribers") had "paid the purchase price" which, in this case, means they earned the shares through services.  However, Stein Riso had no duty to investigate or verify whether any of the Subscribers had in fact performed sufficient services to earn the shares.  The opinion itself made that clear - that Stein Riso "has assumed the factual accuracy of, and without independent investigation have relied upon, the representations, warranties and other information a) provided by the company and b) contained in each subscription agreement."  The opinion states that based upon these representations, the shares may be issued.

The SAC claims that Stein Riso had a duty to advise that Farley was self-dealing.  First, it has not been adjudicated that Farley was, in fact, self-dealing.  More to the point, however, is that whether or not Farley actually performed services sufficient to earn the shares received is not something Stein Riso had any duty to confirm.  The opinion letter clearly says as much, that it is *assuming* the representations and warranties made to Stein Riso are true.  The case law unambiguously supports this lack of duty as well:

2

> [A]ttorneys acting in good faith are not liable for the actions of their clients…[m]oreover, an attorney has no duty to investigate and discover alleged fraud perpetrated upon its client or 'to draw up a list of possible misuses…and then unleash a team of investigators, lawyers, and accountants to see if any misuse theory held water.

*Holtkamp v. Parklex Assoc.*, 30 Misc.3d 1226(A), 926 N.Y.S.2d 344, 2011 NY Slip Op 50208(U) (Sup. Ct., Kings Cty. Feb. 22, 2011) (*quoting Schimenti v. Whitman & Ransom*, 208 A.D.2d 470, 617 N.Y.S.2d 742 (1st Dep't 1994)).  To hold otherwise would saddle corporate attorneys with the additional duty to retain hordes of professionals to verify the representations made by each client. Forensic accounts would have to be retained to verify whether Farley did work sufficient to earn his pay.  With regard to the scientist subscriber Stephen McCahon, experts would have to be retained to examine the laser that was designed so Stein Riso could somehow verify that the effort McCahon put into the laser justified the pay received.  This is absurd.  The cases are clear that there is no such duty placed upon a corporate attorney like Stein Riso, nor could there be.

Plaintiff's claims alleging violations of the New York Rules of Professional Conduct (the "RPC") are not actionable and subject to dismissal as duplicative of its claims for legal malpractice. Plaintiff's opposition argues the quantum Stein Riso was paid as a purported violation of RPC 1.5 and RPC 1.8, which is identical to Plaintiff's allegations in support of its legal malpractice claim.

Plaintiff's opposition also argues that Stein Riso did not make the appropriate disclosures to Plaintiff required by RPC 1.8 in entering the Subscription Agreement.  The documentary evidence (the Subscription Agreement which is incorporated by reference in the SAC) conclusively demonstrates that these disclosures were made by Stein Riso and Plaintiff warranted that it had been advised to seek independent counsel before entering into the Subscription Agreement.

Plaintiff's aiding and abetting breach of fiduciary cause of action also remains insufficient, because: (1) it is premised on the erroneous legal conclusion that Farley breached his fiduciary

duty to Plaintiff; and (2) fails to establish actual knowledge or substantial assistance by Stein Riso to Farley's purported breach of duty.  Whether Farley breached his fiduciary duty to Plaintiff is still being litigated in the Delaware Court of Chancery and there has been no final adjudication by the Delaware Court.

The opposition also fails to establish that the SAC contains allegations sufficient to show Stein Riso had knowledge of Farley's purported breach of duty or substantially assisted Farley with the knowledge Farley was doing something wrong.  New York courts do <u>not</u> entertain this cause of action in regular negligence situations, and the handful of decisions that permitted the claim were reserved for the most extreme examples of malfeasance (such as back-dating a contract or soliciting investments in a known Ponzi scheme).  To sufficiently plead a claim for aiding and abetting breach of fiduciary duty the SAC must allege the attorney *knew that he was assisting something that was wrong*, but nothing in the SAC comes close to the extremely high standard to sufficiently plead this claim in New York.  To date, there has been no adjudication that Farley's conduct was improper, let alone that Stein Riso *knew* such conduct was improper or substantially assisted such improper conduct.

Lastly, Plaintiff's opposition still fails to state a securities fraud claim against Stein Riso based on a violation of § 10(b) or Rule 10b-5 as the SAC does not plead that Stein Riso was in possession of any material non-public information of which Plaintiff was not already aware, or that Stein Riso made any material representations or omissions upon which Plaintiff relied.

For the foregoing reasons, as set forth in greater detail below and in Stein Riso's initial Memorandum of Law in support of its Motion, the Second Amended Complaint should be dismissed.

## ARGUMENT

### I.    Plaintiff Fails to State a Claim for Legal Malpractice

Plaintiff's opposition fails to rebut the clear case law holding that an attorney owes no duty to the client when negotiating his compensation.  The opposition attempts to impose duties that Stein Riso did not owe Plaintiff.  Simply put, Plaintiff's allegations that Stein Riso owed Plaintiff a duty regarding the quantum of Stein Riso's compensation has been rejected by the Court of Appeals in *Matter of Lawrence,* 24 N.Y.3d 320, 23 N.E.3d 965, 998 N.Y.S.2d 698 (2014), and Plaintiff has not cited any case law or authority to the contrary in its opposition, essentially conceding the point that Stein Riso owed no duty with regard to its compensation.

Furthermore, Plaintiff's allegations that Stein Riso owed Plaintiff a duty to investigate, advise or inform is also wholly unsupported.  Courts have consistently reached the very opposite conclusion, including *Holtkamp v. Parklex Assoc.*, 30 Misc.3d 1226(A), 926 N.Y.S.2d 944 (Sup. Ct., Kings Cty. Feb. 22, 2011) (quoted above), relying on the holdings in *Schimenti v. Whitman & Ransom*, 617 N.Y.S.2d 742 (1st Dep't 1994), and *Weisman, Celler, Spett & Modlin v. Chadbourne & Parke,* 271 A.D.2d 329, 706 N.Y.S.2d 414 (1st Dep't 2000).  Plaintiff's opposition does not allege that Stein Riso's drafting of the opinion letter, the Subscription Agreement or the documents for the issuance of stock and the filing with the SEC, were erroneous or fell below the applicable standard of care.  Instead, Plaintiff repeats the same conclusory and insufficient allegations set forth in the Complaint, i.e. Stein Riso's purported failure to investigate, inform, or advise Farley or Plaintiff on what Plaintiff unilaterally perceives Stein Riso should have done.  (Doc. # 21, ¶¶ 86.a, c-j, o-q; Doc. # 29, pp. 11-12).

Plaintiff's claims that Stein Riso had a duty to investigate, inform, or advise about Farley's purported self-dealing is without merit.  As a threshold matter, there has been no adjudication that

5

Farley self-dealt or engaged in any conduct that was a breach of his fiduciary duty to Plaintiff.  As the documentary evidence shows, Farley, along with other non-party vendors, received their shares pursuant to subscription agreements *warranting that Plaintiff had received services equal* to the amount of shares issued.  Stein Riso was permitted to rely on the documents provided by its client and the warranties and representations made to it concerning the validity of these transactions.  New York courts have held that an attorney is not liable for the conduct of it client and has no duty to investigate alleged theories of misconduct.  *See supra.*

Plaintiff's attempts to blur the lines by making non-specific allegations that Stein Riso billed for "securities matters" even though securities work was not initially within Stein Riso's scope of work," (Doc. # 29, p. 13), do not set forth a cause of action of legal malpractice.  Again, Plaintiff does not allege that the work performed by Stein Riso, i.e the drafting of the opinion letter, the Subscription Agreement or the documents for the issuance of stock and the filing with the SEC, were erroneous or fell below the applicable standard of care.  Instead, Plaintiff's chief complaint is that Stein Riso breached its duties to Plaintiff by failing to investigate, inform, and advise.  It is undisputed that Plaintiff, through Farley, executed the Subscription Agreement and that it was Farley himself who suggested "us[ing] par value as the price per share since it approximates FMV…[w]ithout any negotiation or request for such increase from Stein Riso" (Docs. # 21, ¶¶ 23, 28; 21-4; and 21-6).  The documentary evidence also shows, and Plaintiff does not refute, that Farley drafted all the required corporate documentation for the issuance of additional shares, including the board and committee authorizations and instructions to Continental.  Stein Riso had no duty to investigate matters that its client, Plaintiff, represented it was authorized to do.

Furthermore, Plaintiff's allegation that Stein Riso's conduct was a "substantial factor in causing AE's injuries," (*id.*) does not satisfy the element of proximate causation required to assert

6

a legal malpractice claim.  A cause of action for legal malpractice requires that a plaintiff demonstrate "that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages." *Nomura Asset Capital Corp. v Cadwalader, Wickersham & Taft LLP*, 26 N.Y.3d 40, 49, 41 N.E.3d 353, 360, 19 N.Y.S.3d 488, 495 (2015).  "[T]o establish the elements of proximate cause and actual damages in a malpractice case, the plaintiff must show that but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." *Zarin v. Reid & Priest*, 184 A.D.2d 385, 386, 585 N.Y.S.2d 379, 381 (1st Dep't 1992).

Plaintiff argues that the opinion letter provided by Stein Riso and Stein Riso's purported duty to advise Farley was a "substantial factor" in causing Plaintiff's injuries.  (Doc. # 29, p.13). However, as demonstrated *supra*, the price per share utilized in the subscription agreements between Plaintiff and the non-party vendors and all the corporate documents authorizing the issuance of shares, was drafted not by Stein Riso but rather *by Plaintiff*, through its representative, Farley. Accordingly, any purported injury incurred by Plaintiff in connection with the price per share was proximately caused by Plaintiff's own conduct, not Stein Riso.

Based on the foregoing, Plaintiff's claim for legal malpractice must be dismissed.

## II.     Violations of Rules of Professional Conduct Do Not Give Rise to a Cause of Action and Are Duplicative of the Legal Malpractice Claim

Plaintiff's opposition argues that its claims for violations of the RPC are not based on Stein Riso's purported malpractice.  (Doc. # 29, p.16) ("In fact, AE's cause of action is not based on Stein Riso's malpractice").  However, Plaintiff's allegations in support of its claim of purported violations of the RPC are identical to Plaintiff's claims in support of its legal malpractice claim. Claims for disgorgement of fees and rescission based on the same operative facts as the legal malpractice claim are duplicative of and subject to dismissal.  *See Serova v. Teplen,* No. 05-cv-6748 (HB), 2006 U.S. Dist. LEXIS 5781 (S.D.N.Y. Feb. 16, 2006); *Sage Realty Corp. v. Proskauer*

7

*Rose*, 251 A.D.2d 35, 39, 675 N.Y.S.2d 14 (1st Dep't 1998); *Palmeri v. Wilkie Farr & Gallagher LLP,* 156 A.D.3d 564, 567, 69 N.Y.S3d 267 (1st Dep't 2017).

Plaintiff's opposition argues that Stein Riso's "charging of 10 million shares…was excessive given the $10,000 alleged debt." (Doc. #29, p. 16).  However, the documentary evidence demonstrates that the total value of the shares received by Stein Riso for its services was $10,000, as each share was valued at $0.001 pursuant to the Subscription Agreement.  (Doc. #21-6).  Although there also remains additional amounts outstanding, Stein Riso has not, at this time, made a claim for any outstanding amounts still due and owing for Stein Riso's legal services rendered to Plaintiff.  Accordingly, it is difficult to fathom how Stein Riso's $10,000 in fees for more than a year's worth of legal services rendered were excessive and in violation of RPC 1.5.  To the extent Plaintiff is attempting to argue that the shares were undervalued and should have been priced at a higher value, this is identical to Plaintiff's legal malpractice claim and should be dismissed as duplicative.  *See Keness v Feldman, Kramer & Monaco*, P.C., 105 A.D.3d 812, 813-814, 963 N.Y.S.2d 313 (2d Dep't 2013); *Miazga v. Assaf*, 136 A.D.3d 1131, 924 N.Y.S.2d 666 (3d Dep't 2016).

Plaintiff's opposition does not dispute that there is no prohibition against an attorney entering into a business transaction with its client.  *See Greene v. Greene*, 56 N.Y.2d 86, 92, 436 N.E.2d 496, 451 N.Y.S.2d 46 (N.Y. 1982).  Plaintiff's argument that Stein Riso violated RPC 1.8 is based solely on legal conclusions without any actual support.   Plaintiff argues that the Subscription Agreement was not "fair and reasonable", but provides no basis for this conclusion.  As discussed above, Stein Riso received $10,000 in shares from Plaintiff in exchange for legal services rendered.  Plaintiff dictated the price per share that was utilized in the Subscription Agreement, and Stein Riso took no affirmative steps and no active participation in Plaintiff's

decision as to the price per share.  (Doc. # 21-4).

As to the disclosure requirements, Plaintiff's opposition does not set forth any argument or case law for why this Court's decision in *Friedman v. Kuczkir,* 272 F.Supp.3d 613 (S.D.N.Y. 2017), does not apply.  In *Friedman,* this Court found that even if the disclosure protections provided under the RPC were not made does not automatically render the agreement unenforceable or entitle Plaintiff to rescission.  *Id.* at 632-633.  Accordingly, even if Stein Riso did not advise Plaintiff in writing of the desirability of seeking independent counsel, does not render the Subscription Agreement subject to rescission or Stein Riso subject to disgorgement of its fees.

Based on the foregoing, Plaintiff's claims for violation of RPC 1.5 and 1.8 should be dismissed because they fail to state a cause of action for which this Court can provide a remedy and are duplicative of Plaintiff's legal malpractice cause of action.

## III.   Plaintiff Fails to State a Cause of Action for Aiding and Abetting Breach of Fiduciary Duty

Plaintiff's opposition argues that a decision by a Delaware Court of Chancery granting a preliminary injunction in Plaintiff's litigation against Farley establishes that Farley breached a fiduciary duty.  However, a decision from a proceeding in an entirely different jurisdiction and to which Stein Riso was not a party has no impact or precedential value on the instant proceedings.  Furthermore, Plaintiff grossly mischaracterizes the Delaware court's decision, which was in regards to an order to show cause for a preliminary injunction.  The findings and holdings in determining preliminary injunction relief is *not a final adjudication* that can be applied to the instant proceeding.

The documentary evidence clearly shows that Farley, Plaintiff's CEO and sole board member, provided Stein Riso with all the requisite documentation, including board minutes, committee authorizations, and subscription agreements demonstrating that the issuance of stock

and other transactions were duly authorized by the Plaintiff. None of these documents were prepared by Stein Riso. Such general knowledge acquired by Stein Riso in the course of performing its legal services does not sufficiently plead that Stein Riso knew it was assisting any purported breach of fiduciary duty by Farley. *See Oster v. Kirschner,* 77 A.D.3d 51, 52-27, 905 N.Y.S.2d 69, 70-73 (1st Dep't 2010); *Kaufman v Cohen*, 307 AD2d 113, 125, 760 N.Y.S.2d 157 (1st Dep't 2003); *Kolbeck v. LIT Am., Inc.,* 939 F.Supp. 240, 246 (S.D.N.Y. 1996).

Plaintiff's opposition fails to argue why the cases cited in Stein Riso's moving papers are inapplicable to the instant claims. Unlike the cases cited by Plaintiff, which address aiding and abetting in the context of a fraud cause of action, Stein Riso's arguments are based on cases addressing the actual claim before this Court: <u>aiding and abetting a breach of fiduciary duty.</u> Plaintiff fails to identify any new aiding and abetting a breach of fiduciary duty cases to advance their position, which is a clear indication that none exists.

Plaintiff's reliance on *JP Morgan Chase Bank v. Winnick,* 406 F.Supp.2d 247 (S.D.N.Y. 2005), is misplaced. The *Winnick* court reaffirmed that New York courts and federal courts in this district require actual knowledge, not recklessness, to satisfy the "knowledge" element for an aiding and abetting claim. *Id.* at 253. FN4 *citing Kolbeck v. LIT American Inc.,* 939 F.Supp. 240, 246 (S.D.N.Y. 1996). *Winnick* is distinguishable from the instant matter before this Court. As an initial matter, the *Winnick* defendants conceded that the first element of the claim had been satisfied, i.e. the existence of a fraud. In the instant matter before this Court, the existence of a breach of fiduciary duty by Farley remains at issue and contested in the Delaware court. Furthermore, in *Winnick* the court found that the defendants possessed actual knowledge because they "actively participated in negotiating transactions and drafting contracts for the Improper Swaps" and the documentary evidence, i.e. emails that were referenced in the complaint, contained

10

language "which could reasonably be understood to demonstrate actual knowledge of the true purpose of the swaps."  406 F.Supp.2d at 254.  Nothing even close to such evidence has been provided by Plaintiff.  As the *Winnick* court held, "suspicion, without confirmation, does not satisfy the actual knowledge requirement for a claim of aiding and abetting fraud." *Id.* at 255.

Plaintiff's reliance on *Goldson v. Walker*, 65 A.D.3d 1084. 885 N.Y.S.2d 133 (2d Dep't 2009), is also easily distinguishable. As an initial matter, *Goldson,* like *Winnick,* deals with a claim for aiding and abetting fraud, wherein the existence of the fraud was established.  Furthermore, in *Goldson*, the defendant, *inter alia*, provided false information in a real property transfer report. This corroborates the argument in Stein Riso's moving papers, that absent some extreme conduct such as "back dating" or "forging documents" by the lawyer, New York courts have consistently rejected claims for aiding and abetting breach of fiduciary duty.  In the instant matter, there are no such extreme allegations made against Stein Riso.  *See In re ICP Strategic Credit Income Fund Ltd.*, 2015 Bankr. LEXIS 3128; *Bullmore v. Ernst & Young Cayman Is.*, 45 A.D.3d 461, 464, 846 N.Y.S.2d 145 (1st Dep't 20007).

Furthermore, Plaintiff's arguments that Stein Riso's opinion letter alleges any type of investigation by Stein Riso is directly refuted by the letter itself, which states, in relevant part:

> In conducting our examination, we have assumed the genuineness of all signatures, the legal capacity of all individual signatories, the accuracy of all documents submitted to us as originals and the conformity to originals of all documents submitted to us as copies or electronic versions thereof (whether or not certified).  In addition, we have assumed the factual accuracy of, and without independent investigation have relied upon, the representations, warranties and other information: (a) provided by the Company to us; and (b) contained in each Subscription Agreement.  In particular, we have relied upon the representation of:...(ii) the Company that each Subscriber has fully paid the purchase price for his or its Subject Securities in accordance with the provisions of the applicable Subscription Agreement.

(Doc. # 21-12) (emphasis added).  Stein Riso relied upon Plaintiff's representations in drafting the opinion letter, (Doc. # 21-12), and "accepting one's client's view as to the business decision to be made is not knowledge that one's client was doing anything wrong." *ICP Strategic Credit Income Master Fund Ltd. v. DLA Piper LLP (US) (In re ICP Strategic Credit Income Fund Ltd.),* Case. Nos. 13-12116 (REG), 14-01835 (REG), 2015 Bankr. LEXIS 3128 at *44-45 (Bankr. S.D.N.Y. Sep. 15, 2015).   Accordingly, Plaintiff's arguments that the opinion letter contains any misrepresentations or falsities is utterly refuted by the language in the document itself.

Based on the foregoing, Plaintiff's opposition fails to remedy the deficiencies in its pleadings.  As Plaintiff cannot establish the necessary elements for a claim of aiding and abetting breach of fiduciary duty, Plaintiff's claim must be dismissed.

## IV.     Plaintiff Fails to State a Claim for Securities Fraud

As Plaintiff's opposition concedes, the argument is not supported by any published or unpublished opinion or case law.  (Doc. # 29, p. 23).  This is for good reason: Plaintiff's argument is untenable and fails to establish the required elements for a securities fraud cause of action. Despite this, Plaintiff conclusorily states that "the elements necessary to establish a Rule 10b-5 claim are present."  (*Id.*).  Plaintiff argues that it has sufficiently pled a securities fraud claim because: (1) Stein Riso allegedly defrauded Plaintiff and its shareholders because Stein Riso acquired shares of Plaintiff at a purportedly improperly low price while in possession of information that Plaintiff's shareholders did not know; and (2) Stein Riso allegedly issued a deceptive opinion letter to Plaintiff's transfer agent, Continental Stock Transfer & Trust Company ("Continental").  (*Id.*).  Neither of these arguments cure Plaintiff's pleading deficiencies nor do they satisfy the elements required to assert a claim for securities fraud.

12

Plaintiff alleges that, at the time Stein Riso agreed to receive Plaintiff's shares at par value as payment for its services, Stein Riso was in possession of material non-public information about Plaintiff's plans to restart its business operations, exit shell status and enter into agreements.  (Doc. # 21, ¶ 133; Doc. # 29, p. 23).  To establish a § 10(b) or Rule 10b-5 claim for damages Plaintiff must establish, *inter alia,* that a misstatement or omission of a material fact by Stein Riso upon which Plaintiff relied in connection with the purchase or sale of securities.  *Morin v. Trupin*, 778 F.Supp. 711 (S.D.N.Y. 1991); *Lloyd v. Indus. Bio-Test Laboratories, Inc*., 454 F.Supp. 807, 810 (S.D.N.Y. 1978); *Du Pont v. Brady*, 636 F.Supp. 1067, 1072 (S.D.N.Y. 1986).  Plaintiff's opposition admits that any purported material non-public information that Stein Riso possessed was provided by Farley, and not vice versa.  (Doc. # 29, pp. 23-24).  Plaintiff admits that it was aware of such information which was "treated as confidential by AE and was not made public until months later."  (Doc. # 21, ¶ 134).  Not Farley, but AE the entity.  Plaintiff further admits that "this information was known to AE's sole remaining officer and director" and they both knew" this material and non-public information.  (*Id.*).  Accordingly, Plaintiff cannot plead any purported representations or omissions made by Stein Riso, or any reliance upon same, which merits dismissal of Plaintiff's cause of action.  *See Walsh v. Rigas*, No. 17 Civ. 4089 (NRB), 2019 U.S. Dist. LEXIS 10959 at *19 (S.D.N.Y. Jan. 23, 2019).

In an attempt to salvage its pleading deficiencies, Plaintiff's opposition argues that Farley was not its authorized representative.  (Doc. # 29, p. 25).  However, the cases cited by Plaintiff are entirely distinguishable.  In *Buckley v. Deloitte & Touche USA LLP,* 2007 U.S. Dist. LEXIS 37107 (S.D.N.Y. May 21, 2007) and *Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54 (2d Cir. 2013), the courts held not to impute the fraudulent conduct of plaintiff's insiders to the plaintiff entity in the context of applying an *in pari delicto* affirmative

13

defense.[1]   The *Buckley* and *Picard* courts' decisions not to impute fraudulent conduct to the plaintiff entity is not applicable to the instant matter.  In the instant litigation, Plaintiff is claiming that Stein Riso acted with material non-public information that Plaintiff was not privy to, despite Plaintiff's admission that Farley was, at the time of the subject events, the CEO of Plaintiff and the sole member of Plaintiff's board.

Furthermore, "the general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it."  *Center v. Hampton Affiliates, Inc.,* 66 N.Y.2d 782, 784, 488 N.E.2d 828, 497 N.Y.S. 898 (N.Y. 1985) (citations omitted).  Plaintiff's opposition attempts to assert the "adverse interest" exception to this general rule by conclusorily arguing that Farley breached his duties to Plaintiff.  However "[t]o come within the exception, the agent must have totally abandoned his principal's interests and be acting entirely for his own or another's purposes" and "cannot be invoked merely because he has a conflict of interest or because he is not acting primarily for his principal."  (*Id.* at 784-785); *see also Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.),* No. 18-cv-6658 (JSR), 2019 U.S. Dist. LEXIS 104562 (S.D.N.Y. June 21, 2019).  As the SAC and opposition admit, Farley's conduct and knowledge was, *inter alia*, to restart Plaintiff's business.  Thus, Farley's conduct was not solely for his own purposes and the adverse interest exception does not apply.  Accordingly, as New York courts have consistently held, Farley's knowledge, as Plaintiff's CEO and sole board member, is imputed to Plaintiff.  Plaintiff's arguments alleging "tippee liability" and Stein Riso was in possession of purported material non-public information that Plaintiff was not privy to is without merit.

---

[1] The *Buckley* court was also interpreting Pennsylvania law, not New York law in connection with its decision on this issue.  (*Id.*).

14

Lastly, Plaintiff's arguments that Stein Riso made misrepresentations in its opinion letter to Continental which resulted in the alleged improper issuance of stock.  Plaintiff alleges that Stein Riso did not review the documents referenced in the opinion letter.  However, the documentary evidence establishes that there was no misrepresentation in Stein Riso's opinion letter.   From February 16, 2016 through March 22, 2016, Plaintiff provided Stein Riso with all the documents referenced in Stein Riso's opinion letter.  (Docs. # 21-7, 21-10, 21-12 through 21-15).  In addition, as addressed above, any information contained in Stein Riso's opinion letter was not information that Plaintiff was not privy to or upon which Plaintiff relied.  Based on the foregoing, Plaintiff's claim for securities fraud must be dismissed.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, it is respectfully submitted that Defendant's motion to dismiss Plaintiff's Second Amended Complaint on the merits and with prejudice made pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) should be granted in its entirety, and the Court Clerk should enter judgment in favor of the Defendant, along with such other and further relief as is just and proper.

Dated:  New York, New York
　　　　September 13, 2019

　　　　　　　　　　　　　　　　　Respectfully,
　　　　　　　　　　　　　　　　　WILSON, ELSER, MOSKOWITZ, EDELMAN &
　　　　　　　　　　　　　　　　　DICKER LLP

　　　　　　　　　　　By:　　　＿＿＿＿＿＿＿＿＿/s/ Joseph L. Francoeur＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　Joseph L. Francoeur
　　　　　　　　　　　　　　　　　Tina C. Ma
　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　*STEIN RISO MANTEL MCDONOUGH, LLP*
　　　　　　　　　　　　　　　　　150 East 42nd Street
　　　　　　　　　　　　　　　　　New York, New York 10017
　　　　　　　　　　　　　　　　　p. (212) 490-3000
　　　　　　　　　　　　　　　　　f. (212) 490-3038
　　　　　　　　　　　　　　　　　e: joseph.francoeur@wilsonelser.com
　　　　　　　　　　　　　　　　　e. tina.ma@wilsonelser.com

15

10059164v.3