USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/31/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Applied Energetics, Inc.,

              Plaintiff,

–v–

Stein Riso Mantel McDonough, LLP,

              Defendant.

19-cv-1232 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

      Plaintiff Applied Energetics, Inc. brings this suit against Defendant Stein Riso Mantel McDonough, LLP alleging legal malpractice, aiding and abetting a breach of fiduciary duty, rescission and restitution for violations of New York Rules of Professional Conduct, and securities fraud. Before the Court is Stein Riso's motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, this motion is GRANTED in part and DENIED in part.

**I.   BACKGROUND[1]**

      On February 9, 2016, George Farley, then the Principal Executive Officer of Plaintiff Applied Energetics, signed a retainer agreement with Defendant Stein Riso. Second Am. Compl. ¶¶ 1, 16. Pursuant to this retainer agreement, Stein Riso was to provide legal services to Applied Energetics for "general business and tax matters" and "such other matters which [Applied Energetics] may refer to [Stein Riso] from time to time," but excluding "any matters involving

---

[1] The following facts are drawn from Applied Energetic' Second Amended Complaint, Dkt. No. 21, and are assumed to be true for purposes of Stein Riso's motion to dismiss. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

1

[Applied Energetics'] responsibilities under Federal or state securities laws." *Id.* ¶ 17.  After the retainer was executed, Farley, on behalf of Applied Energetics, negotiated with Stein Riso to pay for $5,000 of Stein Riso's legal services via stock in Applied Energetics.  *Id.* ¶ 18.  Stein Riso represented Applied Energetics in preparing the Common Stock Subscription Agreement pursuant to which the firm would subscribe to purchase shares of Applied Energetics common stock at $.001 per share.  *Id.* ¶¶ 18–19.  Stein Riso did not at any point advise Applied Energetics to consult independent legal counsel to review the Common Stock Subscription Agreement and neither sought nor obtained a written waiver of this potential conflict from Applied Energetics. *Id.* ¶ 20.  Stein Riso did not investigate whether its purchase of Applied Energetics shares at $.001 was fair to Applied Energetics and its shareholders, it did engage the services of an investment professional to value Applied Energetics' shares, and it knew that Farley had not obtained any such independent advice.  *Id.* ¶¶ 24–25.  At the time the draft Common Stock Subscription Agreement was being prepared, Applied Energetics stock was trading publicly at roughly $.004.  *Id.* ¶ 26.  Stein Riso executed its subscription agreement for 10 million Applied Energetics shares at $.001 per share on February 16, 2016.  *Id.* ¶ 29.

On February 12, 2016, Farley sent Stein Riso draft Applied Energetics Board of Directors meetings minutes, indicating that Farley, the only member of the Board, also intended to issue 20 million shares of Applied Energetics stock to himself and 23 million shares to others at a price of $.001 per share.  *Id.* ¶¶ 31–32.  Stein Riso reviewed these draft minutes and suggested changes and revisions.  *Id.* ¶ 32.  At the time, Stein Riso knew both that this proposed transaction was self-interested and that Farley had a fiduciary duty to Applied Energetics, as its sole director and Principal Executive Officer, to negotiate for the highest possible stock price from any third parties seeking to purchase Applied Energetics shares.  *Id.* ¶ 33.  Stein Riso further knew that

Farley had unilaterally set the value he would cause Applied Energetics to issue shares at $.001 per share and had not reached that value through any negotiations with any third party. *Id.*

Stein Riso assisted Farley in carrying out these intended stock issuances by consenting to Farley utilizing Stein Riso's form subscription agreement for the additional issuances, by reviewing and revising the draft Board of Directors meeting minutes authorizing the issuances, by preparing and filing amendments to Applied Energetics' charter with the Delaware Secretary of State increasing the authorized amount of Applied Energetics shares from 125 million to 500 million, and by providing an opinion letter to Applied Energetics' stock transfer agent purporting to opine that the stock issuances were valid. *Id.* ¶ 35. Stein Riso provided this opinion letter stating that the issuances of stock by the Board—then comprised only of Farley—were valid despite the fact that, pursuant to Applied Energetics' bylaws and resolutions, Board of Directors actions could be taken only by a majority of a three-member board. *Id.* ¶ 44. Included in the opinion letter Stein Riso issued was an opinion regarding the validity of the shares issued to Stein Riso itself. *Id.* ¶ 49.

Around the time that these stock transactions were taking place, Applied Energetics, which had been a shell company, was in the process of restarting its business operations. *Id.* ¶ 57. Stein Riso was aware, prior to finalization of the Common Stock Subscription Agreement, that Applied Energetics planned to restart its business activities. *Id.* ¶ 60. Four days after this fact was disclosed in a Form 10-K filed with the SEC, Applied Energetics stock closed at $.04 per share—forty times what Stein Riso had paid per share under the Common Stock Subscription Agreement. *Id.* ¶ 59.

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *McCarthy*, 482 F.3d at 191.

To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, "the complaint's factual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible." *Arista Records, LLC, v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal citations and alterations omitted). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Generally, "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" may be considered in assessing whether a claim is sufficient to survive a Rule 12(b)(6) motion. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## III. DISCUSSION

As an initial matter, the parties agree that New York law applies to the state-law claims Applied Energetics asserts in the Second Amended Complaint. *See* Dkt. No. 27 at 9–20; Dkt. No. 29 at 5–19. "This agreement—'as evidenced by [their] reliance on that law . . . in [their] briefing'—'ends the choice-of-law inquiry,'" and the Court thus applies New York law to the

state-law claims. *Lemon v. Hollinger*, No. 17-cv-4725 (RA), 2017 WL 6547741, at *2 (S.D.N.Y. Dec. 19, 2017) (quoting *Bennett v. Sterling Planet, Inc.*, 546 Fed. App'x 30, 33 (2d Cir. 2013)).

### A. Legal Malpractice

Stein Riso argues that Applied Energetics fails to state a legal malpractice claim under New York law because it fails to allege facts that, if true, would constitute a breach of the standard of care and because it fails to allege proximate cause. The Court disagrees.

"A cause of action for legal malpractice poses a question of law which can be determined on a motion to dismiss." *Kirk v. Heppt*, 532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008). In order to state a claim for legal malpractice under New York law, a plaintiff must allege "1) an attorney-client relationship, and 2) attorney negligence, 3) which is the proximate cause of, 4) actual damages." *Id.*; *see also Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). To plead attorney negligence, a plaintiff must "aver that an attorney's conduct 'fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession.'" *Achtman*, 464 F.3d at 337 (quoting *Grago v. Robertson,* 49 A.D.2d 645, 646 (1975)). As a general matter, "an attorney may only be held liable for 'ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action.'" *Id.* (quoting *Bernstein v. Oppenheim & Co.,* 160 A.D.2d 428, 430 (1990)). For this reason, a "complaint that essentially alleges either an 'error of judgment' or a 'selection of one among several reasonable courses of action' fails to state a claim for malpractice." *Id.* (quoting *Rosner v. Paley*, 65 N.Y.2d 736, 738 (1985)).

To adequately allege proximate cause, a plaintiff must allege facts demonstrating that "but for the defendant's negligence, he or she would have prevailed in the underlying action or would not have sustained any damages." *Prout v. Vladeck*, 371 F. Supp. 3d 150, 156 (S.D.N.Y. 2019). Applied Energetics argues that a legal malpractice plaintiff alleging a breach of fiduciary

duty need not allege "but for" causation but rather need only allege that the breach was a "substantial factor" contributing to its injury. *See* Dkt. No. 29 at 9. Not so—under New York law, "the level of causation required in [a] breach of fiduciary duty . . . case[] depends on the type of remedy sought," *LNC Investments, Inc. v. First Fid. Bank, N.A. New Jersey*, 173 F.3d 454, 465 (2d Cir. 1999) (Sotomayor, J.), and where, as here, *damages* are sought for breach of fiduciary duty under New York law, "the traditional notion of proximate cause is the appropriate standard to apply," *Fin. Freedom Senior Funding Corp. v. Bellettieri, Fonte & Laudonio, P.C.*, 852 F. Supp. 2d 430, 437 (S.D.N.Y. 2012) (citing *LNC,* 173 F.3d at 465). At the motion to dismiss stage, a plaintiff "need only allege, not prove, the proximate cause element of the legal malpractice claim." *Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008).

With respect to damages, "New York Law limits a plaintiff's 'recovery in legal malpractice actions to pecuniary damages,'" and thus, in its complaint, "a plaintiff must allege pecuniary damages." *Bryant v. Silverman*, 284 F. Supp. 3d 458, 471 (S.D.N.Y. 2018) (citing *McPhillips v. Bauman*, 133 A.D.3d 998, 999 (3d Dep't 2015)).

The Court concludes that the Second Amended Complaint states a claim for legal malpractice. With respect to the first element, it alleges the existence of an attorney-client relationship between Stein Riso and Applied Energetics. Second Am. Compl. ¶¶ 16–17.

With respect to the second element, the Second Amended Complaint alleges several theories of malpractice. *See id.* ¶ 86. One such theory is that Stein Riso failed to comply with Rule 1.8 of the New York Rules of Professional Conduct when it accepted securities as payment from Applied Energetics. *Id.* ¶ 86(r). This Rule provides that a "lawyer shall not enter into a

business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless":

> (1) the transaction is fair and reasonable to the client and the terms of the transaction are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
> (2) the client is advised in writing of the desirability of seeking, and is given a reasonable opportunity to seek, the advice of independent legal counsel on the transaction; and
> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

New York Rules of Professional Conduct 1.8.  Notwithstanding Stein Riso's argument that a lawyer does not owe a duty to a client when negotiating a retainer agreement, *see* Dkt. No. 27 at 9–10, the Comment to this Rule explicitly provides that the Rule "must ordinarily be met if a lawyer agrees to take stock (or stock options) in the client in lieu of cash fees." *Id.* Cmt. 4D.

Although Stein Riso is correct that a violation of a disciplinary rule does not *in and of itself* amount to actionable negligence on the part of an attorney, *see* Dkt. No. 27 at 13–17 (citing cases), "liability can follow where the client can show that he or she suffered actual damage as a result" of the violation.  *Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, No. 13-cv-4348 (JMF), 2014 WL 3439620, at *5 (S.D.N.Y. July 15, 2014).  Here, Applied Energetics alleges both that Stein Riso violated Rule 1.8 and that it suffered actual damages as a result.  It alleges that Stein Riso negotiated with Farley to receive payment for some of its legal services via Applied Energetics stock, and that Stein Riso represented Applied Energetics in preparing the Common Stock Subscription Agreement by which *it* would purchase shares of common stock from Applied Energetics.  *Id.* ¶ 18.  Indeed, Stein Riso allegedly billed Applied Energetics for the preparation of this agreement.  *Id.*  The Second Amended Complaint further alleges that Stein Riso did not at any point advise Applied Energetics to consult independent legal counsel to review the Common Stock Subscription Agreement and neither sought nor obtained a written

7

waiver of this potential conflict from Applied Energetics.  *Id.* ¶ 20.  Moreover, according to the Second Amended Complaint, Stein Riso did not investigate whether its purchase of Applied Energetics shares at $.001 was fair to Applied Energetics and its shareholders, it did not engage the services of an investment professional to value Applied Energetics' shares, and it knew that Farley had not obtained any such independent advice.  *Id.* ¶¶ 24–25.  These allegations sufficiently allege a violation of Rule 1.8.  The Second Amended Complaint also alleges that Applied Energetics suffered actual damages as a result of this violation in that it was deprived of the fair market value of 10 million shares of its stock, which was publicly trading at a price about four times higher per share than Stein Riso purchased it for.  *See, e.g.*, *id.* ¶¶ 26, 91.

Furthermore, the Second Amended Complaint also adequately alleges another theory of malpractice—namely that Stein Riso failed to advise Farley, the Principle Executive Officer and sole director of Applied Energetics, of the applicable law and consequences of issuing millions of shares of Applied Energetics stock to himself.  Second Am. Compl. ¶¶ 23, 33, 39–45.  This alleged failure to advise Farley of the consequences of engaging in a self-interested transaction that could violate the fiduciary duties he owed to Applied Energetics evinces, at a minimum, "ignorance of the rules of practice," and no reasonable attorney would have assisted a client in entering into such a transaction without first so advising him.  The Court thus concludes that Applied Energetics has alleged at least two theories of actionable attorney negligence arising from the role Stein Riso played in the issuance of shares of Applied Energetics stock to itself and to Farley.[2]

The Court further concludes that the Second Amended Complaint adequately alleges that "but for the defendant's negligence, [Applied Energetics] . . . would not have sustained any

---

[2] Because the Court concludes that Applied Energetics has adequately alleged this element, the Court does not now consider the other theories of malpractice it advances.  *See* Second Am. Compl. ¶ 86.

damages." *Prout*, 371 F. Supp. 3d at 156. First, it alleges that had Stein Riso done a proper investigation into the true fair market value of Applied Energetics stock, it would have realized that the Common Stock Subscription Agreement—which allowed it to purchase 10 million Applied Energetics shares at $.0001—was not fair to Applied Energetics. Second Am. Compl. ¶¶ 120–125, 219. These allegations raise a reasonable inference that Stein Riso would not have entered into the Common Stock Subscription Agreement had it complied with its Rule 1.8 obligations. Furthermore, the Second Amended Complaint alleges that had Stein Riso properly advised Farley of the applicable law and consequences of his proposed self-interested transaction, he would not have consummated it. *Id.* ¶ 23. At this stage of the litigation, when a plaintiff is required only to allege and not prove the proximate cause element of a legal malpractice claim, *see Even St. Prods.*, 643 F. Supp. 2d at 322, these allegations are sufficient to allege proximate cause.

The Court finally concludes that the Second Amended Complaint alleges actual pecuniary damages. Indeed, as discussed above, it alleges that Applied Energetics suffered the direct loss of the value of the shares that it improperly issued to Stein Riso and Farely, among others, for $.001. Second Am. Compl. ¶¶ 26, 91. Accordingly, the Court concludes that Applied Energetics has sufficiently pleaded its legal malpractice claim, and thus Stein Riso's motion to dismiss this claim is denied.

### B. Aiding and Abetting Breach of Fiduciary Duty

Stein Riso also argues that the Second Amended Complaint fails to state a claim for aiding and abetting a breach of fiduciary duty. This Court again disagrees.

A claim for aiding and abetting a breach of fiduciary duty requires: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in

the breach, and (3) that plaintiff suffered damage as a result of the breach." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 294 (2d Cir. 2006) (quoting *Kaufman v. Cohen,* 307 A.D.2d 113, 125 (1st Dep't 2003)).  With respect to the second element, a plaintiff "must allege that Defendants had actual knowledge of the breach of duty, not mere constructive knowledge." *Flycell, Inc. v. Schlossberg LLC*, No. 11-cv-0915 (CM), 2011 WL 5130159, at *8 (S.D.N.Y. Oct. 28, 2011) (citing *Kaufman,* 307 A.D.2d at 125).  Furthermore, to allege knowing participation, a plaintiff must allege that a defendant provided "substantial assistance" to the primary violation. *Lerner*, 459 F.3d at 294.  "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.  However, the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Lerner*, 459 F.3d at 295 (quoting *Kaufman,* 307 A.D.2d at 126).

Applied Energetics has adequately alleged all elements of an aiding and abetting breach of fiduciary duty claim.  First, it alleges that Stein Riso knew that Farley, the sole director and Principal Executive Officer of Applied Energetics, planned to issue tens of millions of shares of Applied Energetics stock to himself in breach of the fiduciary duties he owed to Applied Energetics. *See, e.g.*, Second Am. Compl. ¶¶ 23, 30, 33.  Furthermore, Stein Riso, as Applied Energetics' attorney, owed Applied Energetics a fiduciary duty.  Thus, Stein Riso's "mere inaction" in the face of knowledge of Farley's alleged breach of his fiduciary duties to Applied Energetics "would be sufficient to establish substantial assistance." *Flycell, Inc.*, 2011 WL 5130159, at *9 (concluding that where defendant attorneys owed plaintiff a fiduciary duty, allegations of their mere inaction were sufficient to constitute substantial assistance).  Here, though, the Second Amended Complaint alleges far more than mere inaction.  Indeed, it alleges

10

that Stein Riso provided Farley with the forms used for the stock issuance to himself; prepared reviewed, and commented on documents, like Board of Directors meeting minutes, needed to consummate that stock issuance; and provided an opinion letter attesting to the validity of the stock issuance. *See, e.g.* Second Am. Compl. ¶ 99. Finally, as stated above, the Second Amended Complaint alleges damages in the direct loss of the value of the shares that were allegedly improperly issued to Farley. Second Am. Compl. ¶¶ 26, 102. Taken together, these allegations are sufficient to state a claim for aiding and abetting breach of fiduciary duty.

### C. Rescission and Restitution

The Court turns next to Applied Energetics' claim for rescission and restitution or recoupment of its legal fees. This claim is based on Stein Riso's alleged violations of New York Rules of Professional Conduct 1.5 and 1.8. *See* Second Am. Compl. ¶¶ 105–131. Because this claim is based on the same operative facts as [Applied Energetics'] malpractice claim," *see, e.g.*, Second Am. Compl. ¶ 86, it is dismissed as duplicative of that claim. *See Serova v Teplen*, No. 05-cv-6748 (HB), 2006 WL 349624, at *4 (S.D.N.Y. Feb. 16, 2006); *see also Mecca v Shang*, 258 A.D.2d 569, 570 (2d Dep't 1999) (concluding the "court should have also dismissed Dr. Mecca's negligent misrepresentation and gross negligence causes of action, since these claims similarly arise from the same facts as his legal malpractice claim and are duplicative of that cause of action").

### D. Securities Fraud

Finally, Applied Energetics asserts a claim for securities fraud under Section 10(b) of the Securities Act and Rule 10b-5 promulgated thereunder. Stein Riso argues that Applied Energetics' Second Amended Complaint fails to state a securities fraud claim, and this Court agrees.

11

In its briefing on this motion, Applied Energetics relies on two different theories of liability under Section 10(b) and Rule 10b-5, one based on allegations of material misrepresentations or omissions, the other on allegations of insider trading.

The elements of a misrepresentation claim under Section 10(b) and Rule 10b–5 are "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). Complaints for private securities fraud claims based on misrepresentations must also satisfy Federal Rule of Civil Procedure 9(b) and are therefore required to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Finally, the Private Securities Litigation Reform Act, among other things, "requires that 'the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)).

Section 10(b) and Rule 10b–5 are also "violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information." *United States v. O'Hagan,* 521 U.S. 642, 651 (1997). "The ambit of Rule 10b–5's prohibition on insider trading extends beyond the insiders who themselves have a fiduciary duty, but also to the 'tippee'

12

recipients of insider information from those who are insiders." *United States v. Rajaratnam*, 802 F. Supp. 2d 491, 497 (S.D.N.Y. 2011) (quoting *SEC v. Ballesteros Franco,* 253 F. Supp. 2d 720, 726 (S.D.N.Y. 2003)). "An individual is liable as a tippee under Rule 10b–5 if (1) the tipper possessed material nonpublic information regarding a publicly traded company; (2) the tipper disclosed this information to the tippee; (3) the tippee traded in securities while in possession of the information; (4) the tippee knew . . . that the tipper had violated a fiduciary duty by providing the information to the tippee; and (5) the tippee benefitted from the disclosure of the information by the tipper." *Id.* "Insider trading claims are also subject to Rule 9(b) of the Federal Rules of Civil Procedure." *S.E.C. v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 247 (S.D.N.Y. 2013).

Under either theory of liability, Applied Energetics' securities fraud claim fails to satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Furthermore, this claim fails for the additional reason that Applied Energetics has not adequately alleged all the required elements to state a claim under either theory of liability.

With respect to its misrepresentation theory, the Second Amended Complaint fails to allege any misstatement or omission by Stein Riso upon which Applied Energetics relied. Applied Energetics argues, to the contrary, that it has satisfied this element, because the Second Amended Complaint alleges that "Stein Riso omitted informing [it] about 'material non-public information' relating to Farley's intent to 'exit shell status' and restart business, even though it knew this information before it purchased [Applied Energetics] shares." Dkt. No. 29 at 22–23. However, the Second Amended Complaint pleads just the opposite. Indeed, it explicitly alleges that "both [Applied Energetics] and Stein Riso *knew the public trading price did not account for this material non-public information*." And Applied Energetics' attempt to walk back this

allegation in its memorandum of law in opposition to Stein Riso's motion to dismiss cannot salvage its claim.

With respect to its insider trading theory, it fails to allege that Farley, the alleged tipper, breached a fiduciary duty *by providing* the alleged nonpublic information to Stein Riso *or* that Stein Riso was aware of such a breach. Applied Energetics argues in its opposition to Stein Riso's motion to dismiss that because Stein Riso "owed [Applied Energetics] fiduciary duties, . . . its 'tippee' liability is unquestionable." Dkt. No. 29 at 23. However, this argument misconstrues what Applied Energetics is obligated to allege. The relevant question for purposes of alleging a *securities fraud* claim is not whether Stein Riso owed Applied Energetics fiduciary duties, but rather whether *Farley* violated a fiduciary duty *he owed* to Applied Energetics in providing Stein Riso with the alleged material nonpublic information *and* whether Stein Riso was aware of the violation. The Second Amended Complaint fails to allege any such facts. Accordingly, Applied Energetics' securities fraud claim must be dismissed under both theories of liability.[3]

## IV. CONCLUSION

For the foregoing reasons, Stein Riso's motion to dismiss is GRANTED in part and DENIED in part. Applied Energetics' claims for rescission and restitution or recoupment and for securities fraud are DISMISSED with prejudice.

The parties are ordered to appear before the Court by telephone on June 26, 2020, at 3:30 p.m. for an initial pretrial conference. They are directed to submit a joint letter and proposed case management plan to the Court 7 days prior to that conference. In their joint letter, the

---

[3] The Court also notes that though it dismisses on grounds other than duplicativeness, the assertion of this claim appears to be an attempt to replead its legal malpractice claim as a securities fraud claim.

parties should indicate whether they can do without an initial pretrial conference altogether. If so, the Court may enter a case management plan and scheduling order and the parties need not appear.

This resolves Dkt. No. 26.

SO ORDERED.

Dated: May 31, 2020
　　　　New York, New York

_____
ALISON J. NATHAN
United States District Judge